2003 SD 111

**Lester L. DAVIS, Jr., Bankruptcy Examiner, In the Interest of the Bankruptcy Estate of Patrons Cooperative Association, Plaintiff and Appellee,**

v.

**FARMLAND MUTUAL INSURANCE COMPANY, Defendant and Appellant,**

and

**Robert Heidgerken, Michael Yackley, Darrel Bishop, Kenneth Singpiel, Laverne Koch, Edward McMahon, Ronald Johnson, Joe Varilek, and Cathy Everett, Defendants.**

Nos. 22726, 22729.

Supreme Court of South Dakota.

Considered on Briefs Aug. 25, 2003.

Decided Sept. 10, 2003.

Michael J. Whalen, Rapid City, SD and Brad A. Schreiber of Day, Morris & Schreiber, L.L.P., Belle Fourche, SD, for plaintiff and appellee.

John Stanton Dorsey of Whiting, Hagg and Hagg, L.L.P., Rapid City, SD, for appellant Farmland Mutual.

ZINTER, Justice.

[¶ 1.] In 1999, Patrons Cooperative Association filed for Chapter 11 bankruptcy protection. The bankruptcy court appointed Lester Davis, Jr. as a bankruptcy examiner. Davis investigated Patrons' prior business activities and commenced legal proceedings against Patrons' directors[1] and managers for damages arising from their operation of the business. Davis also commenced this declaratory judgment action against Farmland Mutual Insurance Company to determine whether Patrons' Directors, Officers and Managers Liability Insurance Policy (DOM policy) afforded

---

1. Although the record is not consistent, some officers may be included with the "directors," as that later term is used in this action.

coverage for the directors and managers. The trial court granted partial summary judgment. It concluded that the "insured vs. insured" and "dishonest acts" exclusions did not preclude coverage for the directors. However, the trial court found that there were genuine issues of material fact relating to the managers' conduct under the "dishonest acts" exclusion. Therefore, the trial court denied summary judgment for the managers. An attempted appeal from that non-final decision was denied by this Court. The circuit court then certified its partial coverage determination as a final judgment pursuant to SDCL 15–6–54(b). Farmland now appeals again from the partial coverage determination. By notice of review, Davis appeals the Rule 54(b) certification. We reverse the Rule 54(b) certification, dismiss the appeal, and remand for trial and final judgment on all coverage issues.

## FACTS AND PROCEDURAL HISTORY

[¶ 2.] Patrons was a cooperative that operated in Rapid City. Prior to 1994, the business operated a bulk plant and a gas station known as the Main Stop. In the early to mid 1990's, the bulk plant was upgraded at a cost of approximately $250,000, and the gas station was converted to a convenience store at a cost of over $200,000. General supervision and control of the cooperative was under the board of directors. The managers were responsible for the day-to-day affairs.

[¶ 3.] In 1994, Patrons was faced with decreasing membership and increasing fuel costs. Consequently, Patrons decided to significantly expand its operation by building a new store in Rapid City. Notwithstanding certain risks, Patrons purchased 12.2 acres of land without conducting a feasibility study to determine whether the proposed store could operate at a profit. Patrons paid $270,000 for the land even though the company only needed two acres for the proposed store and car wash. The realtor who sold the 12.2 acres represented that the parcel could be split into lots and sold; however, it was later discovered that the land could not be subdivided. Consequently, the cooperative owned 10.2 acres more than it needed.

[¶ 4.] After the land was purchased, feasibility studies indicated that it would take up to three years to start making a profit. However, the feasibility studies were allegedly flawed because of errors and erroneous factual assumptions. Some of the alleged errors and flawed assumptions were: 1) the car wash, which cost $150,000, was not included in the study; 2) the project was originally estimated to cost between $790,000 and $850,000, but actually cost $1.1 million; 3) the studies assumed a fifteen-year loan at nine percent interest, but the project was financed with a seven-year loan at ten percent interest; and 4) actual operating expenses were nearly two times greater than those projected.

[¶ 5.] Patrons subsequently filed a Chapter 11 bankruptcy, and the bankruptcy court ordered the United States Trustee to appoint a disinterested person to serve as a bankruptcy examiner. The trustee appointed Davis. Davis investigated the former directors and managers for allegations of fraud, dishonesty, incompetence, misconduct, mismanagement or irregularity. Based on his findings, the bankruptcy court granted Davis's motion to commence an action against the former directors and managers. The action alleged wrongful acts and breaches of fiduciary duty. Davis claimed losses by the equity security holders of not less than $1.2 million; losses by creditors as a result of the filing of the Chapter 11 bankruptcy;

and, losses incurred by the bankruptcy estate.

[¶ 6.] Davis also commenced this declaratory judgment action to determine whether Patrons' DOM policy afforded coverage for the acts and omissions of the directors and managers. The allegations against the directors included:

1. Failure to use due care, judgment and diligence in the preservation of cooperative assets;

2. Failure to act on an informed basis and in the best interests of the cooperative;

3. Failure to abide by the cooperative bylaws and comply with federal and state law;

4. Failure to make due inquiry of financial and personnel matters detrimentally affecting cooperative business;

5. Failure to avoid undue risks in business ventures and endeavors;

6. Failure to ascertain the relevant and available facts before voting on matters involving cooperative business;

7. Failure to monitor the financial condition of the cooperative;

8. Failure to devote reasonable time and attention to cooperative affairs;

9. Failure to exercise due skill and judgment in making business decisions for the cooperative; and

10. Failure to use due care in the supervision of the cooperative's managers.

Davis's allegations against the managers included:

1. Failure to provide necessary financial statements, reports, and information to the board of directors of Patrons;

2. Failure to keep true books and records;

3. Failure to file necessary government forms and documents;

4. Failure to provide accurate information for independent audits;

5. Failure to utilize accepted bookkeeping and accounting methods;

6. Failure to track member equity;

7. Failure to operate computerized accounting programs;

8. Failure to generate and maintain complete records;

9. Failure to provide promised employee benefits;

10. Failure to attend to cooperative accounts payable and receivable;

11. Failure to abide by cooperative bylaws and policies;

12. Failure to avoid inappropriate personal/sexual relationships in management;

13. Failure to timely prepare complete and correct financial statements for review by the board of directors;

14. Failure to obtain necessary bonds for employees; and

15. Misrepresentation of facts to the board of Patrons' so as to impair proper management of the business and affairs of the cooperative.

[¶ 7.] Farmland moved for summary judgment in the declaratory judgment action arguing that two policy provisions excluded coverage for the directors and managers. Farmland first argued that the directors and managers acted with sufficient bad faith to preclude coverage under the "dishonest acts" exclusion. Farmland also argued that Davis was a representative of Patrons, and therefore coverage was precluded under the "insured vs. insured" exclusion.

[¶ 8.] The circuit court held that the "insured vs. insured" exclusion did not ap-

ply to Davis when acting in the separate legal capacity of a bankruptcy examiner. The court also held that the actions of the directors did not rise to the level of bad faith, and therefore, coverage for the directors was not precluded by the "dishonest acts" exclusion. However, the court found that there were disputed questions of material fact whether the managers engaged in "dishonest acts." Because those factual disputes existed, summary judgment was denied on the request for a coverage determination for the managers.

[¶ 9.] Farmland appealed the partial summary judgment on the coverage issues that the trial court did decide. We dismissed that appeal because it was not an appeal taken from a final judgment. *See* SDCL 15–26A–3, *infra* n. 1. Farmland subsequently requested that the trial court certify its partial coverage determination as a final judgment under SDCL 15–6–54(b). The circuit court granted Farmland's 54(b) motion, and Farmland now appeals again raising two issues.

1. **Whether the "insured vs. insured" provision of the DOM policy excluded coverage.**

2. **Whether the "dishonest acts" provision of the DOM policy excluded coverage.**

By notice of review, Davis appeals the trial court's 54(b) certification questioning:

3. **Whether the circuit court erred in certifying the partial coverage determination as a final judgment under SDCL 15–6–54(b).**

Because we hold that the 54(b) certification should not have been granted, we need not address Issues 1 and 2.

## DECISION

[¶ 10.] The jurisdictional issue raised in Davis's notice of review requires us to determine if Farmland's appeal is properly before this Court. SDCL 15–26A–3 limits our appellate jurisdiction. With the exception of discretionary intermediate appeals, that statute generally requires that the circuit court decision appealed must be a final order or judgment.[2] However, SDCL 15–6–54(b) provides that a party seeking an appeal from an order that disposes of some, but not all claims or all parties may have that non-final decision certified as a "final judgment."

When multiple claims for relief or multiple parties are involved in an action, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and

**2.** SDCL 15–26A–3 provides:
Appeals to the Supreme Court from the circuit court may be taken as provided in this title from:
(1) A judgment;
(2) An order affecting a substantial right, made in any action, when such order in effect determines the action and prevents a judgment from which an appeal might be taken;
(3) An order granting a new trial;
(4) Any final order affecting a substantial right, made in special proceedings, or upon a summary application in an action after judgment;
(5) An order which grants, refuses, continues, dissolves, or modifies any of the remedies of arrest and bail, claim and delivery, injunction, attachment, garnishment, receivership, or deposit in court;
(6) Any other intermediate order made before trial, any appeal under this subdivision, however, being not a matter of right but of sound judicial discretion, and to be allowed by the Supreme Court in the manner provided by rules of such court only when the court considers that the ends of justice will be served by determination of the questions involved without awaiting the final determination of the action or proceeding; or
(7) An order entered on a motion pursuant to § 15–6–11.

upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

*Id.*

[¶ 11.] In reviewing a judgment entered pursuant to SDCL 15–6–54(b), we first determine whether the action involves multiple claims or multiple parties and thus falls within the purview of Rule 54(b). We then decide whether the trial court abused its discretion in making the determination that there was no just cause for delay in entering judgment with respect to one or more but fewer than all of the multiple claims. "This question is not always easy of resolution, for there is no hard and fast test that can be applied in a mechanical manner." Ochs v. Northwestern Nat'l Life Ins. Co., 254 N.W.2d 163, 168 (S.D.1977).

[¶ 12.] In this case, it is clear that multiple parties exist. It is also clear that the trial court's partial summary judgment decided the coverage issues relating to the directors, but left the managers' "dishonest acts" coverage issue for trial. Therefore, our analysis is narrowed to the issue of "whether the trial court abused its discretion in making an express determination that there was no just reason for delay in entering final judgment." *Id.*

[¶ 13.] A Rule 54(b) certification is not a procedural formality. It is "an essential prerequisite" that has "jurisdictional significance." *Id.* Moreover, the certification is only permitted in the "infrequent, harsh case."

[T]he procedure contemplated by Rule 54(b) is usually more than a formality. Perhaps it can properly be viewed as mere formality, albeit an essential prerequisite of immediate appeal, in those cases where it is clear that the disposition of a portion of the litigation has been such as would clearly have constituted an appealable final judgment under [the rules in place] before the adoption of the Rules of Civil Procedure. But otherwise and ordinarily an application for a 54(b) order requires the trial judge to exercise considered discretion, weighing the overall policy against piecemeal appeals against whatever exigencies the case at hand may present. Indeed, the draftsmen of this Rule have made explicit their thought that it would serve only to authorize "the exercise of a discretionary power to afford a remedy in the infrequent harsh case . . . ." It follows that 54(b) orders should not be entered routinely or as a courtesy or accommodation to counsel. The power which this Rule confers upon the trial judge should be used only 'in the infrequent harsh case' as an instrument for the improved administration of justice and the more satisfactory disposition of litigation in the light of the public policy indicated by statute and rule.

*Id.* at 168–69 (quoting Panichella v. Pennsylvania R.R. Co., 252 F.2d 452, 454 (3rdCir.1958)). Therefore, we have adopted three rules to guide the trial courts in exercising discretion on a 54(b) request.

(1) the burden is on the party seeking final certification to convince the [trial] court that the case is the 'infrequent harsh case' meriting a favorable exercise of discretion; (2) the [trial] court must balance the competing factors present in

the case to determine if it is in the best interest of sound judicial administration and public policy to certify the judgment as final; (3) the [trial] court must marshall and articulate the factors upon which it relied in granting certification so that prompt and effective review can be facilitated.

*Id.* at 169 (further citations omitted). We have also identified some of the competing factors to be considered when deciding whether to grant 54(b) certification:

In reviewing 54(b) certifications, other courts have considered the following factors, inter alia: (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the [trial] court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in setoff against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like. Depending upon the facts of the particular case, all or some of the above factors may bear upon the propriety of the trial court's discretion in certifying a judgment as final under Rule 54(b).

*Id.* (quoting Allis–Chalmers Corp. v. Philadelphia Elec. Co., 521 F.2d 360, 364 (3rdCir.1975)). In applying these factors, we reiterate: that appeals under RCP 54(b) will be considered appropriate in only the rare case, just as petitions for appeals from intermediate orders ... are granted only infrequently, and the trial court must include a "reasoned statement

in support of its determination that 'there is no just reason for delay' and its express direction for 'the entry of a final judgment as to one or more but fewer than all of the claims or parties' where the justification for the certificate is not apparent." *Id.* (further citations omitted). Mere recitation of the statutory language is insufficient. *Id.*

[¶ 14.] In the present case, the trial court reasoned:

Having reviewed the matter and having considered the arguments and briefs, the Court finds that the interests of *judicial economy* dictate that the *questions* of insurance coverage in this case be *finally adjudicated* which *may* be dispositive of the underlying action [the action for damages].... The Court finds that the interests of justice will be served, that there is no just cause for delay and good cause having been shown and pursuant to SDCL 15–6–54(b)....

(Emphasis added.)

■ [¶ 15.] We initially review this reasoning that a "final" adjudication of the insurance coverage "questions" ... "may" be dispositive of the underlying action and thereby serve the interests of judicial economy. In our view, these reasons do not support a 54(b) certification in this case. First, as previously noted, the trial court's finding of disputed fact concerning the managers' conduct under the "dishonest acts" exclusion will require a trial on that coverage question. Therefore, our review of this partial summary judgment will not "finally" adjudicate the coverage "questions" under the DOM policy.[3] Second, while a final adjudication of *all* insurance coverage "questions" could dispose of the underlying action, we fail to see how deciding all but the managers "dishonest

---

**3.** The only situation in which our review would be dispositive, is if we reversed the trial court on the "insured vs. insured" exclusion issue.

acts" coverage question would do so. That is especially the case where the claimed damages for the acts and omissions of the managers are essentially the same as the damages sought from the directors. Under these circumstances, it makes no difference whether the bankruptcy examiner's recovery of insurance proceeds comes from *directors* acts/omissions or the *managers* acts/omissions. Consequently, appellate review of the directors' coverage, without also deciding the managers' coverage, would not seem likely to dispose of the underlying action. Indeed, we have been informed in appellate briefing that the underlying action for damages is proceeding despite this trial court's request of another circuit judge to stay the damage action pending our decision in this appeal.

[¶ 16.] We also believe that the three relevant 54(b) factors fail to support certification. Factor one considers the relationship between the adjudicated and unadjudicated claims. Here the allegations against the managers are similar to the allegations against the directors. Consequently, the trial on the managers coverage issue will develop a more complete record for resolving both the managers and directors coverage. Additionally, any new facts revealed in the trial of the managers' "dishonest acts" coverage question may be used to further inform the directors' coverage issue. New facts may be considered because the trial court's decision on directors' coverage is not final; therefore, the trial court is free to revise its opinion should further fact development so dictate. SDCL 15–6–54(b).

[¶ 17.] We also consider that under factor three, if we were to affirm the partial summary judgment, there will still be a need for trial concerning the managers. Therefore, we may be asked to review the dishonest acts exclusion a second time. This also means that under factor five,

delay, economic and solvency considerations, shortening the time of trial ... expense and the like weigh in favor of developing one complete factual record before appellate review. A complete factual record will not only assist in our initial appellate review, but a complete and final factual record will also resolve all coverage questions and thereby eliminate the substantial likelihood of further delay and expense of a second appeal to this Court before resolving the bankruptcy. Finally, a complete factual record will decrease the likelihood of inconsistent decisions on the coverage issue for the managers and the directors under the "dishonest acts" exclusion.

[¶ 18.] In the final analysis, we believe that the outstanding factual dispute concerning the managers' "dishonest acts" should be resolved to more efficiently dispose of this declaratory judgment action and the bankruptcy. Unless this Court reverses the trial court on the "insured vs. insured" coverage question, Farmland's liability will not be finally determined by this appeal. Because this Court's decision on the partial summary judgment will not decide the managers' coverage for "dishonest acts," a trial and second appeal to this Court are likely. Moreover, that trial will be delayed until this appeal is decided. Finally, it appears that the underlying action for damages is proceeding despite this appeal. Under all of the circumstances, this piecemeal determination of the various issues is not in the interest of judicial economy. All factual issues relating to insurance coverage should be determined in one proceeding before appellate review. This is not the "rare" or "infrequently harsh case" justifying piecemeal review. *Ochs,* 254 N.W.2d at 168.

[¶ 19.] For these reasons, we reverse the 54(b) certification, dismiss this appeal and remand for trial.

[¶ 20.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and MEIERHENRY, Justices, concur.