#25555-a-GAS

**2010 S.D. 84**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

BRYAN and KAYLA JACQUOT,                    Plaintiffs and Appellants,

v.

JAMES and KAREN ROZUM,                      Defendants,
and
MITCHELL REALTY CO., LLC,
STEPHEN PESCHONG and
RALPH KINER,                                Defendants and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
DAVISON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE SEAN M. O'BRIEN
Judge

\* \* \* \*

CARL J. KOCH
Mitchell, South Dakota                      Attorney for plaintiffs
                                            and appellants.


STEPHEN C. LANDON
SHAWN NICHOLS of
Cadwell, Sanford, Deibert & Garry, LLC
Sioux Falls, South Dakota                   Attorneys for defendants
                                            and appellees.

\* \* \* \*

                                            CONSIDERED ON BRIEFS
                                            ON OCTOBER 4, 2010

                                            OPINION FILED **10/27/10**

#25555

SEVERSON, Justice

[¶1.]        When Bryan and Kayla Jacquot experienced water problems in their basement, they initiated this action against the prior owners of their home, James and Karen Rozum, and the parties' limited real estate agent, Stephen Peschong, an employee of Mitchell Realty, LLC.  The trial court granted the Rozums' motion for summary judgment on the Jacquots' fraud, deceit, and fraudulent misrepresentation claims.  The trial court also granted all the defendants' motion for summary judgment on the issue of punitive damages.  The Jacquots appeal, arguing that the trial court erred by granting summary judgment on the issue of punitive damages and that the trial court improperly instructed the jury at trial.  We do not reach the summary judgment issue and affirm on the remaining issues.

## BACKGROUND

[¶2.]        The Rozums built a house in Mitchell, South Dakota, in the summer of 2000.  When the excavation contractor began work on the basement, he discovered that a water-bearing sand and gravel vein ran through the property.  He also observed water seeping from the sides of the excavated basement.  Approximately two inches of water accumulated in the basement during excavation.  Drain tile was subsequently installed both inside and outside the foundation, but the wet soil conditions caused excavation cave-ins during the installation.  James Rozum visited the site on a regular basis during the construction of the basement, and the masonry contractor told him about the excessive groundwater.  As a result, Rozum installed a waterproof membrane on the exterior of the basement cement-block walls.  But when the house was nearly complete, a severe rainstorm hit the Mitchell

- 1 -

area and dumped more than five inches of rain in a very short time. Water penetrated the basement and damaged a large portion of sheetrock, which the Rozums replaced.

[¶3.]		The Rozums moved into their new home in September 2000. But their water problems continued over the next several years. On one occasion, the Rozums experienced water problems in the basement due to a "failed beaver system." They repaired the area where the water accumulated. On another occasion, a sump pump failed, causing water damage in the basement. Again, the Rozums made the necessary repairs. The Rozums also raised the waterproof membrane around parts of the foundation, and they believed this repair finally resolved their water problems.

[¶4.]		The Rozums decided to sell their home in 2006. They listed their home with Peschong, a licensed real estate agent employed by Mitchell Realty. In late July or early August 2006, Peschong advised the Rozums that they needed to fill out a seller's property condition disclosure statement to list their house for sale. In completing the disclosure statement, Peschong asked the Rozums questions and filled in their answers on the statement. James Rozum did not read the disclosure statement and does not remember whether Peschong asked all the questions on it. The disclosure statement contained a series of questions related to water problems in the home:

> STRUCTURAL INFORMATION
> If the answer is yes to any of the following, please explain under additional comments or on an attached separate sheet.
>
> 1.	Are you aware of any water penetration problems in the walls, windows, doors, basement, or crawl space?

2.     What water damage related repairs, if any, have been made? If any, when?

3.     Are you aware if drain tile is installed on the property?

4.     Are you aware of any interior cracked walls or floors . . . ? What related repairs, if any, have been made?

The Rozums left the questions on the disclosure statement related to water problems unanswered.

[¶5.]     The Rozums moved to the Kansas City area in late summer 2006. During this time, they received an offer to purchase their Mitchell home, but a professional inspection of the property revealed higher than normal moisture levels on exposed areas of the interior basement walls. The inspection also uncovered evidence of water entry and damage in the basement. The offer was rescinded as a result of the inspection. When the Rozums received the inspection report, they prepared an amended disclosure statement. In answer to the questions about water problems, the Rozums stated, "After an extended period of rainfall, there was some dampness on the south basement wall. The grade on the south side of the house has been raised to improve drainage away from the house."

[¶6.]     Also in November 2006, the Jacquots began looking for a home in the Mitchell area. They first viewed the Rozums' home with their realtor, Janet Fritzmeier. During his initial tour of the home, Bryan Jacquot noticed moisture on a basement wall. Nonetheless, the Jacquots subsequently became interested in the Rozums' home and contacted Peschong directly to hasten negotiations. With the permission of both parties, Peschong agreed to represent the Jacquots and the Rozums as a limited agent. The Jacquots toured the Rozums' home with Peschong

on December 3, 2006. Peschong provided the Jacquots a copy of the amended disclosure statement that day.

[¶7.] With knowledge of the home's water problems, the Jacquots submitted an offer that was $55,000 less than the Rozums' asking price. The purchase agreement also included a home inspection contingency. The Rozums accepted the Jacquots' offer on the condition that the sale be "as is," and Peschong revised the purchase agreement to remove the inspection contingency. The Rozums and the Jacquots agreed to the terms of the sale and signed the revised purchase agreement. The sale closed on December 26, 2006. The Jacquots took possession of the home that day.

[¶8.] Within months, the Jacquots experienced water problems in the basement of their home. When Kayla Jacquot discovered black mold in the basement in July 2007, the Jacquots hired a mold remediation team. The team removed the bottom four feet of sheetrock in one corner of the basement, revealing wet sheetrock, dripping wet insulation, and evidence of numerous past repairs. The Jacquots therefore contacted Larry Jirsa, a Mitchell architect. Jirsa recommended that the Jacquots re-excavate the basement perimeter to determine the cause of the water problems. The excavation revealed that: the drain tile was incorrectly installed; the waterproof membrane was falling off the basement wall; the waterproof membrane was improperly sealed; and, the membrane did not extend over a mortar joint at the basement footing. Jirsa determined that the basement had not been properly waterproofed and that the water problems were chronic.

With Jirsa's supervision, the Jacquots properly waterproofed the basement and restored the interior areas at a cost in excess of $60,000.

[¶9.]     The Jacquots initiated these proceedings in March 2008. As to the Rozums, the Jacquots alleged fraud and deceit, fraudulent misrepresentation, and failure to disclose under SDCL §§ 43-4-37 to 43-4-44, inclusive.[1] The Jacquots further alleged that Peschong breached his fiduciary duty and that Mitchell Realty was vicariously liable for that breach. The Jacquots also requested that punitive damages be awarded against all defendants. But before trial, the trial court granted the Rozums' motion for summary judgment on the Jacquots' fraud, deceit, and fraudulent misrepresentation claims. The trial court also granted all the defendants' motion for summary judgment on the issue of punitive damages. The trial court found that the Jacquots presented no evidence that the defendants acted willfully, wantonly, recklessly, or with the intent to commit fraud. The case proceeded to trial on the failure to disclose claim against the Rozums and on the breach of fiduciary duty claim against Peschong and Mitchell Realty. The jury awarded the Jacquots a verdict against the Rozums in the amount of $39,796, but rendered a verdict in Peschong and Mitchell Realty's favor. The Jacquots appeal the judgment in favor of Peschong and Mitchell Realty.

---

1.    SDCL 43-4-38 provides, in relevant part, that "[t]he seller of residential real property shall furnish to a buyer a completed copy of the disclosure statement before the buyer makes a written offer." And SDCL 43-4-42 provides that "a person who intentionally or who negligently violates §§ 43-4-37 to 43-4-44, inclusive, is liable to the buyer for the amount of the actual damages and repairs suffered by the buyer as a result of the violation or failure."

## ANALYSIS AND DECISION

[¶10.]    **1.    Whether the trial court erred by granting all the defendants' motion for summary judgment on the issue of punitive damages.**[2]

[¶11.]    Peschong argues that the Jacquots' appeal of this issue is untimely. On September 14, 2009, the trial court certified its order granting all the defendants' motion for summary judgment on the issue of punitive damages as a final judgment under SDCL 15-6-54(b). A notice of entry of the judgment was made on September 21, 2009. A final judgment resolving the rights of all parties on all remaining claims was entered after trial on January 11, 2010. The Jacquots filed their notice of appeal on February 10, 2010. Because the Jacquots did not appeal the trial court's final judgment granting all the defendants' motion for summary judgment on the issue of punitive damages within thirty days of certification, Peschong argues that this Court does not have jurisdiction to hear the appeal of that issue.

[¶12.]    SDCL 15-26A-3 limits our appellate jurisdiction by allowing appeals only from a final order or judgment.[3] *See Weisser v. Jackson Twp. of Charles Mix*

---

2.    The Jacquots brought their fraud, deceit, and fraudulent misrepresentation claims against only the Rozums. By contrast, the Jacquots requested that punitive damages be awarded against all the defendants. Because the Rozums are not a party to this appeal, we consider only the trial court's grant of all the defendants' motion for summary judgment on the issue of punitive damages.

3.    SDCL 15-26A-3 provides:

> Appeals to the Supreme Court from the circuit court may be taken as provided in this title from:
> (1)    A judgment;

(continued . . .)

*Cnty.*, 2009 S.D. 43, ¶ 3, 767 N.W.2d 888, 889 (quoting *Davis v. Farmland Mut. Ins. Co.*, 2003 S.D. 111, ¶ 10, 669 N.W.2d 713, 717). SDCL 15-6-54(b) (Rule 54(b)) provides that a party seeking an appeal from an order disposing of some, but not all, claims or parties may have that decision certified as a final judgment:

> When multiple claims for relief or multiple parties are involved in an action, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Rule 54(b) certification affects various other rules or procedures. *See* 10 Charles A. Wright, et al., *Federal Practice and Procedure* § 2661 (3d. ed. & Supp. 2010). For example, the time for appeal begins to run on the date of certification. *Id.* *See Fed. Deposit Ins. Corp. v. Tripati*, 769 F.2d 507, 508 (8th Cir. 1985) (citations omitted).

---

(. . . continued)

(2)     An order affecting a substantial right, made in any action, when such order in effect determines the action and prevents a judgment from which an appeal might be taken;

(3)     An order granting a new trial;

(4)     Any final order affecting a substantial right, made in special proceedings, or upon a summary application in an action after judgment;

(5)     An order which grants, refuses, continues, dissolves, or modifies any of the remedies of arrest and bail, claim and delivery, injunction, attachment, garnishment, receivership, or deposit in court;

(6)     Any other intermediate order made before trial, any appeal under this subdivision, however, being not a matter of right but of sound judicial discretion, and to be allowed by the Supreme Court in the manner provided by rules of such court only when the court considers that the ends of justice will be served by determination of the questions involved without awaiting the final determination of the action or proceeding; or

(7)     An order entered on a motion pursuant to § 15-6-11.

In South Dakota, a party must file his notice of appeal within thirty days of certification. SDCL 15-26A-6.[4] This Court does not have jurisdiction over an untimely appeal. *Long v. Knight Constr. Co., Inc.*, 262 N.W.2d 207, 209 (S.D. 1978) (citing *State v. Devine*, 257 N.W.2d 606 (S.D. 1977); *Fed. Land Bank of Omaha v. LeMars Mut. Ins. Co.*, 65 S.D. 143, 272 N.W. 285 (1937)).

[¶13.]     The Jacquots argue that the appeal of this issue is timely. The Jacquots contend that, under South Dakota law, a trial court must provide a "reasoned statement" in support of its Rule 54(b) certification. But here, in certifying its order granting all the defendants' motion for summary judgment on the issue of punitive damages as final, the trial court merely stated that there was "no just reason for delay." The Jacquots thus assert that the trial court's certification was improper, meaning there was, at that time, no final judgment from which to appeal. And consequently, the time for appeal did not begin to run until the trial court entered a final judgment on the parties' remaining claims after trial.

[¶14.]     We first address the Jacquots' contention that the trial court's Rule 54(b) certification was improper. We review a trial court's certification under the abuse of discretion standard. *Weisser*, 2009 S.D. 43, ¶ 3, 767 N.W.2d at 889 (citing *Davis*, 2003 S.D. 111, ¶ 11, 669 N.W.2d at 718). We have cautioned that a trial court, in certifying a judgment as final, must include a

> reasoned statement in support of its determination that 'there is
> no just reason for delay' and its express direction for 'the entry

---

4.    SDCL 15-26A-6 provides: "An appeal from a judgment or order must be taken within thirty days after the judgment or order shall be signed, attested, filed and written notice of entry thereof shall have been given to the adverse party."

of a final judgment as to one or more but fewer than all of the claims or parties' where the justification for the certificate is not apparent. Mere recitation of the statutory language is insufficient. The [trial] court must marshall and articulate the factors upon which it relied in granting certification so that prompt and effective review can be facilitated.

*Id.* ¶ 4, 767 N.W.2d at 889-90 (quoting *Davis*, 2003 S.D. 111, ¶ 13, 669 N.W.2d at 719). *See Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 12, 100 S.Ct. 1460, 1467, 64 L.Ed.2d 1 (1980); *McAdams v. McCord*, 533 F.3d 924, 928 (8th Cir. 2008); *Hayden v. McDonald*, 719 F.2d 266, 268 (8th Cir. 1983) (per curiam). In this case, the trial court merely recited the statutory language and provided no "reasoned statement" supporting its certification. It therefore abused its discretion by certifying its order granting all the defendants' motion for summary judgment on the issue of punitive damages as final.

[¶15.] This case thus presents a question of first impression in South Dakota: whether a party may raise the propriety of a trial court's Rule 54(b) certification in a timely appeal from an adverse decision on the remaining claims in a lawsuit. The case law on this precise question is sparse, but two federal appellate courts and a few state courts have addressed it. This Court routinely looks to other courts' decisions for analytical assistance in interpreting a South Dakota rule of civil procedure that is equivalent to a Federal Rule of Civil Procedure. *Moore v. Michelin Tire Co., Inc.*, 1999 S.D. 152, ¶ 24, 603 N.W.2d 513, 520 (citing *Miller v. Hernandez*, 520 N.W.2d 266, 269 (S.D. 1994); *Mielitz v. Schmieg*, 461 N.W.2d 763, 765 (S.D. 1990)). Because SDCL 15-6-54(b) is substantially the same as its federal counterpart, other courts' decisions on this issue are particularly instructive. *See Weisser*, 2009 S.D. 43, ¶ 5, 767 N.W.2d at 890.

[¶16.]     In *Page v. Preisser*, the Eighth Circuit addressed the precise question

presented in this case. 585 F.2d 336 (1978). Page commenced an action challenging

certain regulations of the Iowa Department of Social Services. The district court

first granted the Department's motion for summary judgment on Page's Supremacy

Clause claim. The district court certified that order as final under Rule 54(b), but

no appeal was taken. Approximately one year later, the district court granted the

Department's motion for summary judgment on Page's Due Process claim and

certified that order as final. Page appealed the second order, raising her Supremacy

Clause and Due Process claims. She argued that the Supremacy Clause issue was

not precluded from appeal because the district court erred by certifying that order

as final. The Eighth Circuit stated:

> In most cases, . . . the party challenging the certification takes a
> timely appeal from the court's order. Our research has failed to
> disclose any cases specifically deciding whether a party who
> neglects to take a timely appeal from a district court's Rule 54(b)
> certification may challenge the propriety of that certification
> after the period for taking an appeal has expired; and if the
> certification is held to have been erroneous, whether the party
> may, in his appeal from the court's final judgment of the
> remaining claims, seek review of the district court's adverse
> decision on the substantive claim underlying the Rule 54(b)
> certification. We hold that such challenges may be made; and
> when a district court erroneously certifies a claim as appropriate
> for immediate appeal under Rule 54(b), a party may raise that
> claim in a timely appeal from an adverse decision on the
> remaining claims in the lawsuit. While, technically, the period
> for taking an appeal begins to run from the time the district
> court enters final judgment pursuant to the Rule 54(b)
> certification, if the certification is erroneous, there is, in fact, no
> proper final judgment from which a party must appeal. . . . [A]
> party ought not to be precluded from raising the propriety of the
> court's certification in a timely appeal from an adverse judgment
> on the other claims in the lawsuit.

*Id.* at 338. The Eighth Circuit concluded that because the district court improperly certified its order granting summary judgment on the Supremacy Clause issue as final, Page was not precluded from raising that issue on appeal. *Id.* at 339. The Eighth Circuit has since maintained this rule. *See Tripati*, 769 F.2d at 508. *See also Pioneer Operations Co., Inc. v. Brandeberry*, 14 Kan.App.2d 289, 789 P.2d 1182 (1990) (adopting Eighth Circuit rule and allowing party to challenge the propriety of Rule 54(b) certification after the time for appeal expired).

[¶17.]     The Ninth Circuit, the only other federal appellate court to consider the issue in a reported decision, reached the opposite conclusion in *In re Lindsay*, 59 F.3d 942 (1995). In that case, the bankruptcy court granted Beneficial Reinsurance Corporation summary judgment and certified its order as final under Rule 54(b). On appeal, the district court ruled that the bankruptcy court improperly certified its order as final "because it made only a summary determination of 'no just reason for delay' without making any findings." *Id.* at 951. The district court also ruled that an erroneous Rule 54(b) certification does not start the time for appeal. *Id.* The Ninth Circuit disagreed, stating that a Rule 54(b) certification, right or wrong, starts the time for appeal. *Id.* This rule "avoids uncertainty for counsel about when to appeal." *Id.* The Ninth Circuit ultimately concluded that the district court lacked jurisdiction to hear the appeal because the time for appeal expired before the notice of appeal was filed. *Id.* at 952.

[¶18.]     One state court to recently consider the issue presented in this case adopted the Ninth Circuit's approach. In *Allen v. Briggs*, Allen brought a personal injury action against another driver and the driver's employer for injuries he

sustained in a motor vehicle accident. No. 2090289, 2010 WL 3196218

(Ala.Civ.App. Aug. 13, 2010). The trial court granted the employer's motion for

summary judgment and certified its order as final under Rule 54(b). After trial,

Allen attempted to challenge the trial court's grant of summary judgment by

arguing that the Rule 54(b) certification was improper. On appeal, the court found

the Ninth Circuit's approach persuasive:

> [W]e believe that the better course is to require that a party
> seeking to challenge the propriety of a Rule 54(b) certification do
> so in a timely appeal from the certified judgment. . . . To allow a
> later appeal of a judgment certified as final pursuant to Rule
> 54(b) in those circumstances in which a party desires to argue
> that the certification was improper injects uncertainty regarding
> the time to appeal and the finality of judgments. If a judgment
> certified as final may be appealed at a later date, the prevailing
> party is left in limbo, uncertain whether the judgment in its
> favor is, in fact, final or whether it might, at the time the
> remaining claim or claims in the action are resolved, be
> rendered ineffective because the appellate court determines that
> the Rule 54(b) certification was improper. In addition, if a party
> waits to appeal the certified judgment because it believes that
> the certification was improperly granted, that party risks an
> appellate determination that the certification was, in fact,
> properly made, with the resulting foreclosure of the right to
> appeal regarding the certified judgment.

*Id.* at *4 (citing 15A Charles A. Wright, et al., *Federal Practice and Procedure* §

3914.7 (2d ed. 1992) (stating that "a party who believes that a judgment was

improperly entered would be better advised to take a protective appeal and urge

that the appeal be dismissed")) (additional internal citations omitted). Accordingly,

the Alabama appellate court dismissed Allen's appeal of the trial court's grant of

summary judgment. *Id.*

[¶19.]     We conclude that the Ninth Circuit's approach is the better-reasoned

approach. Under this view, the trial court, right or wrong, certified its order

granting all the defendants' motion for summary judgment on the issue of punitive damages as final under Rule 54(b) on September 14, 2009, and the Jacquots should have appealed that judgment in October 2009. Upon a timely appeal, this Court could determine whether the Rule 54(b) certification was appropriate. But the Jacquots did not file their notice of appeal until February 10, 2010. As the Jacquots neglected to file their notice of appeal within thirty days of certification, this Court does not have jurisdiction to hear the appeal of this issue. We therefore do not reach the question whether the trial court erred by granting all the defendants' motion for summary judgment on the issue of punitive damages.

[¶20.] **2.** **Whether the trial court abused its discretion by rejecting the Jacquots' proposed jury instructions describing a real estate agent's fiduciary duty to his clients.**

[¶21.] The Jacquots argue that the trial court abused its discretion by rejecting their proposed jury instructions describing a real estate agent's fiduciary duty to his clients. We have previously clarified our standard of review for jury instructions as follows:

> A trial court has discretion in the wording and arrangement of its jury instructions and therefore we generally review a trial court's decision to grant or deny a particular instruction under the abuse of discretion standard. However, no court has discretion to give incorrect, misleading, conflicting, or confusing instructions: to do so constitutes reversible error if it is shown not only that the instructions were erroneous, but also that they were prejudicial.

*State v. Harris*, 2010 S.D. 75, ¶ 21, ___ N.W.2d ___, ___ (quoting *State v. Cottier*, 2008 S.D. 79, ¶ 7, 755 N.W.2d 120, 125). "Erroneous instructions are prejudicial when in all probability they produced some effect upon the verdict and were

harmful to the substantial rights of a party." *Id.* (quoting *Papke v. Harbert*, 2007 S.D. 87, ¶ 13, 738 N.W.2d 510, 515).

[¶22.] The trial court provided the jury with two instructions describing a real estate agent's fiduciary duty to his clients. The trial court first provided the jury with a general definition of a fiduciary duty:

> In some circumstances, because of a relationship between two parties, one party owes the other a duty to act for the other party's benefit. Such a relationship is called a fiduciary relationship. When a fiduciary relationship exists, the party who owes this legal duty is called a fiduciary, and the legal duty the fiduciary owes is called a fiduciary duty.

The trial court then specifically described a real estate agent's fiduciary duty:

> Real estate agents owe their principals a fiduciary duty to use reasonable efforts to fully, fairly, and timely disclose information to their principals within their knowledge, which is or may be material to the subject matter of their agency. Whether information is material depends on the facts and circumstances of each case. Real estate agents are bound to exercise reasonable care, skill, and diligence in performing the transactions entrusted to them and are responsible for loss legally resulting from their failure to do so. Any acts or omissions by agents in violation of the duties imposed upon them by their agency contract render them responsible to their principals for loss or damages.

The language of these instructions was taken directly from *Saiz v. Horn*, 2003 S.D. 94, 668 N.W.2d 332, and *Hurney v. Lock*, 308 N.W.2d 764 (S.D. 1981), which together define a South Dakota real estate agent's fiduciary duty to his clients. The trial court did not abuse its discretion by rejecting the Jacquots' proposed jury instructions and instead instructing the jury using the language of our case law.

[¶23.] **3.** **Whether the trial court abused its discretion by not submitting the issues of fraud and fraudulent misrepresentation to the jury.**

[¶24.]    The Jacquots finally argue that the trial court abused its discretion by not submitting the issues of fraud and fraudulent misrepresentation to the jury. The Jacquots brought fraud and deceit, fraudulent misrepresentation, and failure to disclose claims against the Rozums, but only the failure to disclose claim went to trial. As to Peschong and Mitchell Realty, the Jacquots alleged only breach of fiduciary duty. But after trial, the Jacquots moved to amend their pleadings under SDCL 15-6-15(b) to allege fraud, deceit, and fraudulent misrepresentation against Peschong and Mitchell Realty.[5] The Jacquots also asked that the trial court instruct the jury on fraud and fraudulent misrepresentation. There is, however, no indication in the record that those issues were tried by express or implied consent. *See* SDCL 15-6-15(b). *See also Tri-State Ref. and Inv. Co., Inc. v. Apaloosa Co.*, 431 N.W.2d 311, 314-15 (S.D. 1988). Moreover, the trial court granted the defendants' motions for summary judgment on the fraud, deceit, and fraudulent

---

5.    SDCL 15-6-15(b) provides:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

misrepresentation claims against the Rozums and on the issue of punitive damages. The trial court certified its orders granting the defendants' motions for summary judgment as final under Rule 54(b), and the Jacquots did not appeal that judgment within thirty days.  For these reasons, the trial court did not abuse its discretion by denying the Jacquots' motion to amend their pleadings and by not submitting the issues of fraud and fraudulent misrepresentation to the jury.

[¶25.]    Affirmed.

[¶26.]    GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.