#29084-dismiss-MES
**2020 S.D. 24**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

MARK A. HULS, STEVEN E. PETERSON,
CATHERINE M. PETERSON, and
DAVID L. SKOGLUND,                              Plaintiffs and Appellants,

    v.

DAVID M. MEYER, NANCY R. MEYER,          Defendants and Appellees,

    and

MAGNUM 43, LLC, WINDMILL RIDGE,
LLC, RAWHIDE, LLC, and REMINGTON,
LLC,                                             Defendants.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
MCCOOK COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE CHRIS S. GILES
Judge

\* \* \* \*

MICHAEL E. UNKE
Salem, South Dakota                          Attorney for plaintiffs
                                             and appellants.


DANIEL R. FRITZ
TIMOTHY R. RAHN of
Ballard Spahr, LLP
Sioux Falls, South Dakota                    Attorneys for defendants
                                             and appellees.

\* \* \* \*

CONSIDERED ON BRIEFS
MARCH 17, 2020
OPINION FILED **04/29/20**

#29084

SALTER, Justice

[¶1.]     The Appellants are part owners of four LLCs who sought specific
enforcement of unexecuted buy-sell agreements against two other members.  The
court's order granting summary judgment did not resolve all of the parties' claims,
and it was not certified as a final decision prior to the Appellants' appeal.  We
dismiss for lack of appellate jurisdiction without addressing the merits of the issues
presented.

## Background

[¶2.]     Mark Huls, Steven and Catherine Peterson, and David Skoglund
(Appellants) are South Dakota investors who joined David Meyer and Nancy Meyer
(Meyers), both of Nebraska, to form four limited liability companies (LLCs) in 2006
and 2007.  The entities include: Magnum 43, LLC; Rawhide, LLC; Remington, LLC;
and Windmill Ridge, LLC.  Under the parties' business plan, the LLCs would
construct and operate hog confinement facilities on property located in McCook
County.  Each LLC owns one facility that is leased to the Meyers who operate it.
Three of the four LLCs feature an even equity distribution between the Meyers and
the individual investors.

[¶3.]     The Meyers prepared business plans to present to prospective
investors and included unsigned templates of buy-sell agreements among the
various documents associated with their plans.  The LLCs' operating agreements
also reference the buy-sell agreements.[1]  Had the agreements been executed, they

---

1.     Each operating agreement contains a section entitled "Restriction on
       Transfer of Shares," which states that "[t]he transfer of shares is subject to
                                                     (continued . . .)

-1-

would have provided the Appellants with the rights to purchase the Meyers' shares in each respective LLC at the end of the 12-year lease period for book value plus a 3% annual inflation adjustment.

[¶4.] In 2010, the Meyers filed for chapter 11 bankruptcy, which prompted the parties to discuss whether, in fact, valid buy-sell agreements for each LLC existed. Despite the efforts of the parties and their attorneys, no party could produce a signed copy of a buy-sell agreement, either at the time or in the years that followed.

[¶5.] A meeting among the parties took place in October 2016. The Appellants contend the meeting was to "discuss an exit strategy because the leases were coming due." However, the Meyers dispute this and maintain that there was no conversation relating to a buyout of their interests in the LLCs. The parties do agree that they discussed for the first time a request by the Meyers for reimbursement related to repairs, maintenance, and capital improvements to the hog production facilities. The Appellants requested further documentation of the expenses, noting that some of the expenses had occurred pre-bankruptcy and also that the Meyers had not obtained the Appellants' approval before undertaking the capital improvements.

[¶6.] In the early fall of 2017, the Appellants jointly retained counsel, who sent the Meyers a letter demanding a detailed accounting of the expenses and further stating:

_____

(. . . continued)
the buy sell agreement executed by the members contemporaneously with the execution and approval of this operating agreement."

> None of my clients are desirous of extending their lease agreement at this time unless they receive adequate detailed answers concerning the expenditures. If my clients proceed with termination, we will need to determine how to wrap this up. *I do not believe anyone signed the Membership Interest Transfer Restriction and Buy-Out Agreement.*

(Emphasis added.)

[¶7.]    In January 2018, the Appellants commenced this action, requesting: (1) an accounting of maintenance, repair, and capital improvement expenses; (2) a court order restraining the Meyers from taking additional money from the joint expense account; and (3) judicial dissolution of the LLCs and division of the proceeds. In their counterclaim, the Meyers asserted breach of contract and unjust enrichment based on the Appellants' refusal to reimburse for maintenance, repair, and capital improvement expenses.

[¶8.]    The Appellants later amended their complaint to include, among other things, a request for specific performance of the alleged buy-sell agreements.[2] The Meyers moved for summary judgment on the Appellants' specific performance claim, arguing that no enforceable buy-sell agreements existed. The Appellants filed a cross-motion for summary judgment on this issue and also moved for summary judgment relating to the Meyers' claim for maintenance, repair, and capital improvement expenses. In a separate motion, the Appellants moved to

---

2.    The Meyers removed the case to United States District Court for the District of South Dakota after the amended complaint, citing diversity of citizenship as a basis for federal subject matter jurisdiction. *See* 28 U.S.C. § 1332. However, the district court judge granted the Appellants' motion to remand the case to state court after determining the removal was untimely.

amend their complaint a third time[3] to add claims for fraud and deceit, alleging the Meyers were not truthful about the nature and existence of the buy-sell agreements.

[¶9.] Following a hearing on June 13, 2019, to address these motions, the circuit court issued a memorandum decision granting the Meyers summary judgment on the specific performance claim, concluding that there was "no genuine issue surrounding the fact that the terms of the buy/sell agreements were not mutually consented to by the parties." The court denied the Appellants' summary judgment motion with regard to the disputed maintenance fees and capital improvements because there were "too many unresolved issues as to material facts . . . ." The court also denied the Appellants' motion to amend their complaint, finding that the fraud and deceit claims were without merit.

[¶10.] The circuit court's summary judgment order was denominated as an "Order for and Judgment of Dismissal." In addition to stating the court's ruling, the order also provided that: "There being no just reason for delay, the court expressly directs that judgment be entered accordingly." The court did not include this language in a second, separate order denying the Appellants' summary judgment motion related to the Meyers' claim for reimbursement of expenses and denying the Appellants' motion to amend their complaint.

[¶11.] The Appellants filed their appeal with this Court on July 31, 2019. In their original docketing statement, the Appellants stated they are appealing the circuit court's order "denying [the Appellants'] motion for summary judgment for specific performance of [the] buy-out agreement, . . . [the] motion for summary

---

3. The Appellants' second amended complaint added the LLCs as parties.

judgment on Meyers' claim for maintenance fees and claim for capital improvements, and [the] motion to [the] amend complaint."[4]

[¶12.]     The Appellants' original docketing statement further indicated that they are appealing a final judgment of an order that resolved "all of each party's individual claims, counterclaims, or cross-claims."  The Appellants later amended their docketing statement to state that the appeal was *not* taken from a final judgment that resolved all of the parties' claims.  Interestingly, both docketing statements also deny that the circuit court orders had been designated as final pursuant to SDCL 15-6-54(b).  *See* SDCL 15-6-54(b) (Rule 54(b)) (authorizing a circuit court to "direct the entry of a final judgment as to one or more but fewer than all of the claims . . .").

[¶13.]     The parties' submissions raise the following issues for our review, which we restate as follows:

1.     Whether appellate jurisdiction exists.

2.     Whether the circuit court erred when it denied the Appellants summary judgment on their claim for specific performance of the buy-sell agreements.

3.     Whether the circuit court erred when it granted the Meyers summary judgment on the Appellants' claim of specific performance of the buy-sell agreements.

4.     Whether the circuit court abused its discretion when it denied the Appellants' motion to amend their complaint to add the claims of fraud and deceit.

---

4.     By their own admission, the Appellants have abandoned any effort to seek review of the court's decision to deny their motion for summary judgment as to the Meyers' claim for reimbursement of expenses.

**Analysis**

[¶14.]    Our authority to review civil judgments and orders is described in SDCL 15-26A-3. *See Weisser v. Jackson Twp.*, 2009 S.D. 43, ¶ 3, 767 N.W.2d 888, 889. Most often, parties invoke our appellate jurisdiction to review final judgments as a matter of right.[5] *See MGA Ins. Co. v. Goodsell*, 2005 S.D. 118, ¶ 33, 707 N.W.2d 483, 489 (Zinter, J., concurring) ("[O]ur appellate jurisdiction is generally limited to a review of final judgments."). To determine whether a decision is, in fact, final and appealable, we examine the substance of the circuit court's order over its designation to determine whether the order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Knecht v. Evridge*, 2020 S.D. 9, ¶ 42, 940 N.W.2d 318, 331 (quoting *Midcom, Inc. v. Oehlerking*, 2006 S.D. 87, ¶ 15, 722 N.W.2d 722, 726).

[¶15.]    Here, the circuit court's summary judgment order is indisputably not final. By granting the Meyers' motion for summary judgment regarding the Appellants' buy-sell agreement claim, the court only resolved part of the case. The court's separate order denied the Appellants' motion for summary judgment concerning the Meyers' claim for reimbursement for certain expenses and left it unresolved. The summary judgment litigation also did not resolve the Appellants'

---

5.    In addition to appeals taken as a matter of right, we may also exercise appellate jurisdiction to review intermediate circuit court orders as a matter of "sound judicial discretion." SDCL 15-26A-3(6). The procedure for seeking intermediate review requires would-be appellants to file a petition pursuant to SDCL 15-26A-13 within ten days after the notice of entry for the adverse order. Here, the Appellants did not use this procedure. There is no petition seeking intermediate review, and the effort to seek appellate review by means of a notice of appeal came well after the expiration of the ten-day period under SDCL 15-26A-13.

alternative claim for judicial dissolution. Under the circumstances, the Appellants cannot sustain their argument that the summary judgment order was, by its nature and effect, a final appealable order. *See* SDCL 15-26A-3(1) (providing for review of "[a] judgment"); *see also Midcom*, 2006 S.D. 87, ¶ 11, 722 N.W.2d at 725 (citation omitted) ("To be final, a judgment must 'finally and completely adjudicate all of the issues of fact and law involved in the case.'").

[¶16.]    As an alternative to this "final in fact" determination of appealability, the provisions of Rule 54(b) of our rules of civil procedure allow circuit courts to certify orders as final even when they do not resolve all of the parties' claims:

> When multiple claims for relief or multiple parties are involved in an action, the court *may direct the entry of a final judgment* as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

SDCL 15-6-54(b) (emphasis added).

[¶17.]    In *Weisser*, we dismissed an appeal for lack of appellate jurisdiction after determining the circuit court's effort to certify a summary judgment order was ineffective and because it left some of the parties' claims unresolved. 2009 S.D. 43, ¶¶ 1-2, 767 N.W.2d at 889. The circuit court's order stated simply that "[t]here is no just reason for delay, and therefore, this Judgment is designated a Final Judgment under SDCL 15-6-54(b)," but we held that this language "merely repeated the statutory phrase that there was no just reason for delay." *Id.* ¶¶ 1, 3. Drawing from our prior decisions, we stated that Rule 54(b) certification was "not a procedural formality" but is instead "an essential prerequisite that has jurisdictional significance." *Id.* ¶ 4 (quoting *Davis v. Farmland Mut. Ins. Co.*, 2003

S.D. 111, ¶ 13, 669 N.W.2d 713, 718).  To emphasize their exceptional nature, Rule 54(b) certifications must "include a 'reasoned statement in support of its determination that there is no just reason for delay . . . .  *Mere recitation of the statutory language is insufficient.*'"  *Id.* (quoting *Davis*, 2003 S.D. 111, ¶ 13, 669 N.W.2d at 719).

[¶18.]    Here, the circuit court's summary judgment order strays further from our Rule 54(b) requirements than the order we reviewed in *Weisser*.  The order simply directed "that judgment be entered accordingly."  However, notwithstanding its entry, the summary judgment order did not resolve all of the parties' claims and could not, on its own merit, serve as a *final* judgment.[6]

[¶19.]    At most, the summary judgment order recited some of the text of Rule 54(b).  However, even a more complete recitation of the operative language from the rule would not be sufficient in the absence of the circuit court's reasoned statement to explain its decision to invoke the authority of the rule.  To guide circuit courts in their effort to formulate a proper Rule 54(b) certification, we have identified three principal rules:

> (1) the burden is on the party seeking final certification to convince the [circuit] court that the case is the 'infrequent harsh case' meriting a favorable exercise of discretion;
>
> (2) the [circuit] court must balance the competing factors present in the case to determine if it is in the best interest of sound

---

6.    The Appellants also seek review of the court's separate order denying their motion to again amend their complaint to add claims of fraud and deceit.  However, the order denying the motion to amend does not include *any* effort to designate it as a judgment or a final order, and there is no arguable basis for appellate jurisdiction to review the decision.

> judicial administration and public policy to certify the
> judgment as final; [and]
>
> (3) the [circuit] court must marshal and articulate the factors
> upon which it relied in granting certification so that prompt
> and effective review can be facilitated.

*Davis*, 2003 S.D. 111, ¶ 13, 669 N.W.2d at 718-19 (quoting *Ochs v. Nw. Nat'l Life Ins. Co.*, 254 N.W.2d 163, 169 (S.D. 1977)).[7]

[¶20.]        Here, the summary judgment order does not cite Rule 54(b), it does not designate the order as final, and it is not accompanied by a reasoned statement supporting a Rule 54(b) certification.  Nor does the clarity of the record provide conspicuous reasons for certification developed at a hearing or through the submissions of the parties.  In fact, it does not appear that the Appellants moved to designate the summary judgment order as final under Rule 54(b).  In our recent *Stromberger Farms* decision, we allowed for the possibility that the record could provide the basis for certification but only in exceptional cases where the justification was readily apparent.  *Stromberger Farms, Inc. v. Johnson*, 2020 S.D. 22, ¶ 24, ___ N.W.2d ___.  The parties in *Stromberger Farms* specifically litigated the Rule 54(b) issue after the circuit court granted summary judgment on the plaintiff's claim for cattle sale proceeds held by a non-party sale barn.  The resulting

---

7.      Our cases have often stated that certification under Rule 54(b) can be justified only in "infrequent, harsh" cases.  *See, e.g., Stromberger Farms v. Johnson*, 2020 S.D. 22, ¶ 22, ___ N.W.2d at ___.  In *Stromberger Farms*, we acknowledged that the United States Supreme Court has eased the "infrequent, harsh" description for certifications under Federal Rule of Civil Procedure 54(b).  *Id.* ¶ 22 n.6 (citing *Curtiss-Wright Corp. v General Electric Co.*, 446 U.S. 1, 100 S. Ct. 1460, 64 L. Ed. 2d 1 (1980)).  We left for a different case the question of whether the phrase remains illuminating under our version of Rule 54(b), but this is not such a case.  *Id.*

record revealed a patently independent claim and the universal acknowledgement that nearly all of the money was owed to the plaintiff. *Id.* ¶¶ 24-25.

[¶21.]     Though not determinative of our jurisdictional inquiry, the Appellants' docketing statements support the conclusion that there was no Rule 54(b) certification. In both their original and amended versions, the Appellants affirmatively indicate that they are *not* claiming the existence of appellate jurisdiction by virtue of a Rule 54(b) certification.[8]

[¶22.]     Nevertheless, in their reply brief, the Appellants seem to suggest Rule 54(b) as a basis for appellate jurisdiction, stating that this appeal is "justified by judicial economy" by preventing two trials. However, this post hoc argument cannot satisfy the requirements of the rule and our decisional law. Even where the circuit court includes a reference to judicial economy in its certification, that alone may not be sufficient to permit the exercise of appellate jurisdiction. Instead, we may review the efficacy of the court's statement about judicial economy and make our own determination of whether the court's order should be certified under Rule 54(b). *See, e.g., Davis*, 2003 S.D. 111, ¶¶ 14-15, 669 N.W.2d at 719-20. This scrutiny is unnecessary here, however, where a party is simply offering a legal argument separate and apart from the Rule 54(b) certification process.

[¶23.]     The appeal is dismissed.

---

8.     Indeed, in the Appellants' amended docketing statement, they indicate the summary judgment is neither a final order that resolved all claims, nor an order certified as final pursuant to Rule 54(b). Though these assertions are accurate, their combined effect is to eliminate any basis for appellate review as a matter of right.

#29084

[¶24.]     GILBERTSON, Chief Justice, and KERN, JENSEN, and DEVANEY,

Justices, concur.