#28827-aff in pt & rev in pt-SRJ
**2020 S.D. 22**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STROMBERGER FARMS, INC.,
a Nebraska Corporation,                                    Plaintiff and Appellee,


          v.


COREY JOHNSON,                                            Defendant, Third-Party
                                                         Plaintiff and Appellant,


          v.


BART STROMBERGER,                                         Third-Party Defendant and
                                                         Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
BUTTE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE MICHAEL W. DAY
Judge

\* \* \* \*

NATHAN R. CHICOINE of
DeMersseman, Jensen,
    Tellinghuisen & Huffman, LLP
Rapid City, South Dakota                                 Attorneys for defendant, third-
                                                         party plaintiff and appellant.



KENNETH E. BARKER of
Barker Law Firm, LLC
Belle Fourche, South Dakota                              Attorneys for plaintiff, third-
                                                         party defendant and appellees.

\* \* \* \*

                                                         CONSIDERED ON BRIEFS
                                                         AUGUST 26, 2019
                                                         OPINION FILED **04/08/20**

#28827

JENSEN, Justice

[¶1.]            On November 1, 2016, Stromberger Farms, Inc. (Stromberger Farms) purchased cows and calves from Corey Johnson, pursuant to the terms of a written agreement (Sales Agreement). The Sales Agreement required Stromberger Farms to pay for the cattle in three annual installments, with Johnson retaining a security interest in the cattle. In December 2017, Stromberger Farms sold all the remaining cows purchased from Johnson for $508,579 at auction. Stromberger Farms calculated a $322,860 payoff to Johnson to satisfy the balance of the Sales Agreement, with the remaining balance of $185,718.30 paid to Stromberger Farms. Johnson refused to allow any of the sale proceeds to be released from the auction sale barn.

[¶2.]            Stromberger Farms commenced this action against Johnson in Butte County seeking injunctive relief and a monetary judgment for the sale proceeds Stromberger Farms claimed Johnson wrongfully refused to release. Johnson moved for a change of venue, which the circuit court denied. Subsequently, the court granted Stromberger Farms' motion for partial summary judgment on its claim for the sale proceeds, entering a final judgment against Johnson for $185,718.30 pursuant to SDCL 15-6-54(b). Johnson appeals the entry of summary judgment and the order denying the motion for change of venue. We dismiss the appeal of the order denying the change of venue. We affirm the Rule 54(b) certification, and affirm in part and reverse in part the entry of partial summary judgment.

**Facts and Procedural History**

[¶3.]            Stromberger Farms purchased 395 cows and 368 calves from Johnson, pursuant to the Sales Agreement. The total purchase price for the cattle was

$963,000. Stromberger Farms agreed to make three annual principal payments of $321,066.66, plus annual interest payments calculated at 4.25% beginning on November 1, 2016. Next to the total purchase price in the Sales Agreement, the parties added hand-written language stating, "Add 12500 to each payment[.]"[1] It is undisputed that Stromberger Farms made the first two principal payments, together with accrued interest. Stromberger Farms also paid an additional $12,500 with each payment.

[¶4.]    The Security Agreement was not executed until April 12, 2017. One section of the Security Agreement provided:

> Stromberger agrees that it will not sell or attempt to sell the Collateral or any interest in it, except in the normal course of business, and Johnson permits Stromberger to do so provided that Johnson's security interest remains in any cattle that are sold. Specifically, Stromberger may sell any calves, cull cows provided that the payments of Stromberger to Johnson are current at the time of sale. Stromberger may retain the proceeds of any such sale . . . .

[¶5.]    Along with the cattle sale, Stromberger Farms and Johnson also entered into a separate lease agreement for Stromberger Farms to rent pasture land from Johnson for additional compensation. On December 6, 2017, Johnson sent an email to Stromberger Farms stating, "I want to terminate the [pasture] lease and I want [to be] compensated for the damages and expenses you have caused." On December 12, 2017, Stromberger Farms delivered all the remaining

---

1.    It was represented at the summary judgment hearing that this payment was to compensate Johnson for increased tax liability because the payments under the Sales Agreement were made in annual installments.

cows purchased from Johnson for sale at the Belle Fourche Livestock Exchange in Butte County (Sale Barn).

[¶6.] The day before the sale, Stromberger Farms gave notice to Johnson of its intention to sell the cows at the Sale Barn. The letter also terminated the pasture lease. The letter assured that, "Mr. Johnson's name will be placed on the check, along with Stromberger's, requiring both endorsements." When Johnson learned of the proposed sale, he invoked his right under the Security Agreement to inspect the cattle. Johnson also informed the Sale Barn that he would not consent to the sale unless the sale proceeds were issued in his name. The cattle were sold on December 14 and December 15, 2017. The Sale Barn issued two checks for the sale proceeds, both made payable to Stromberger Farms and Johnson.[2]

[¶7.] On December 19, 2017, Stromberger Farms, through counsel, sent correspondence to Johnson, along with an attached worksheet showing a payoff to Johnson under the Sales Agreement of $322,860, including interest through December 20, 2017. The letter requested Johnson approve the calculation so the sale proceeds could be released. Johnson's counsel forwarded a letter to Stromberger Farms on December 22, 2017, claiming Stromberger Farms was in

---

2. Premier Farm Credit, a secured creditor of Stromberger Farms, was also a named payee on the check. Premier Farm Credit and Stromberger Farms endorsed the checks, and Premier did not make a claim to the proceeds.

default for selling the cows outside the normal course of business. The letter did not respond to the proposal to pay the balance of the Sales Agreement.[3]

[¶8.] On December 27, 2017, counsel for Stromberger Farms sent a second letter requesting Johnson approve the payoff calculation. The letter alleged Johnson's actions were preventing Stromberger Farms from "recovering funds due it in the amount of $185,718.30" and that Johnson would be expected to pay interest on these funds. Johnson did not respond.

[¶9.] On January 18, 2018, Stromberger Farms commenced this action against Johnson in Butte County, alleging two counts: "Count One—Johnson'[s] Refusal to Allow Stromberger to Ship 224 of the Calves to Stromberger's Feedlot"; and "Count Two—Johnson's Refusal to Release Proceeds from the Sale of the Cows[.]" On January 19, 2018, counsel for Stromberger Farms corresponded with Johnson's counsel, attaching a copy of the complaint and photocopies of two checks totaling $508,579, endorsed by Stromberger Farms and Premier Farm Credit. The letter concluded:

> I propose that you review my letter to you dated December 19, 2017[,] with the attached worksheet, and respond. I further propose that we come to an agreement as to the distribution of the funds from the sale of the livestock, without prejudice to either of the parties' claims and defenses, and arrange a "closing" at which your client can provide his endorsement of the checks.

[¶10.] Counsel for Stromberger Farms sent another letter on February 5, 2018, stating that litigation could be avoided if Johnson "would simply agree to the

---

3. The record reflects that Johnson's counsel contacted counsel for Stromberger Farms objecting to the payoff figure. However, Johnson did not specify the amount he claimed was owed under the Sales Agreement.

distribution, while preserving any claims to which he feels entitled." The letter also requested Johnson correct any misstatement of facts in the letter. Johnson's counsel responded on February 7, 2018, stating the proposed distribution did not reflect the balance due, but failed to provide an amount Johnson claimed was owed under the Sales Agreement.

[¶11.]	Johnson filed an answer and counterclaim alleging Stromberger Farms (1) breached the terms of the Security Agreement by selling all the cows; and (2) breached the pasture lease agreement. Johnson also filed a third-party complaint against Bart Stromberger, a shareholder in Stromberger Farms, alleging trespass on land and conversion of feed owned by Johnson. Johnson moved for a change of venue to Meade County, where Johnson resided. Following a hearing, the circuit court denied the motion, determining venue was proper in Butte County under SDCL 15-5-1(4) because the complaint was "for the recovery of personal property distrained [in Butte County]."

[¶12.]	Stromberger Farms subsequently filed a motion for partial summary judgment on Count 2 of its complaint, seeking a judgment against Johnson for Stromberger Farms' portion of the proceeds that Johnson refused to allow the Sale Barn to release. On November 15, 2018, the circuit court granted the motion, determining that Stromberger Farms' offer of $322,860 as a payoff under the Sales Agreement was an unconditional "offer of performance" under SDCL 20-5-1,[4] and

---

4.	SDCL 20-5-1 provides: "An obligation is extinguished by an offer of performance, made in conformity to the rules prescribed in this chapter, and with intent to extinguish the obligation."

that Johnson waived objection to the tender under SDCL 20-5-15.[5] The court also concluded there were no facts showing Stromberger Farms had breached the Security Agreement by selling the cows.

[¶13.] On November 21, 2018, Stromberger Farms filed a brief requesting the circuit court certify the summary judgment ruling as a final judgment under SDCL 15-6-54(b). Johnson filed a brief objecting to the request on November 26, 2018. On the same day, the circuit court entered a final judgment in favor of Stromberger Farms and against Johnson in the amount of $185,718.30, plus prejudgment interest from December 21, 2017.

[¶14.] Johnson raises three issues in this appeal:

1.   Whether the circuit court erred when it denied Johnson's motion to change venue to Meade County.

2.   Whether the circuit court's entry of final judgment on Count 2 of Stromberger Farms' complaint was an abuse of discretion.

3.   Whether the circuit court erred in granting Stromberger Farms' motion for partial summary judgment.

**Analysis & Decision**

*1.   Whether the circuit court erred when it denied Johnson's motion to change venue to Meade County.*

[¶15.] Johnson argues the circuit court's reliance on SDCL 15-5-1(4) to maintain venue in Butte County was misplaced because Stromberger Farms did not own the cows, or the proceeds generated from their sale. On the merits,

---

5.   SDCL 20-5-15 provides: "All objections to the mode of an offer of performance, which the creditor has an opportunity to state at the time to the person making the offer, and which could be then obviated by him, are waived by the creditor, if not then stated."

Stromberger Farms argues venue was proper under SDCL 15-5-1(4), but asserts that the order denying venue was an intermediate order which this Court lacks jurisdiction to review. Before considering Johnson's challenge to the circuit court's venue order, we must first determine whether we have jurisdiction to review the order.

[¶16.] "This Court has only such appellate jurisdiction as may be provided by the legislature. The right to appeal is statutory and therefore does not exist in the absence of a statute permitting it." *Wegner v. Siemers*, 2018 S.D. 76, ¶ 4, 920 N.W.2d 54, 55 (quoting *State v. Schwaller*, 2006 S.D. 30, ¶ 5, 712 N.W.2d 869, 871). This Court in *City of Rapid City v. State*, held that in a venue challenge in a civil case, "the right of appeal from intermediate orders regarding change of venue is not appealable as of right, but rather as a matter of the Court's discretion under [SDCL 15-26A-13]." 279 N.W.2d 165, 166 (S.D. 1979). A party seeking review of an intermediate order must file "a petition for permission to appeal, together with proof of service thereof upon all other parties to the action in circuit court, with the clerk of the Supreme Court within ten days after notice of entry of such order." SDCL 15-26A-13.

[¶17.] Johnson failed to timely file a petition seeking permission for discretionary review of the venue order under SDCL 15-26A-13, or otherwise seek to include the circuit court's venue ruling as a part of the Rule 54(b) certification. Nonetheless, Johnson argues this Court may review the venue order under SDCL 15-26A-7. SDCL 15-26A-7 provides that on appeal from a final judgment this Court may review "any order, ruling, or determination of the trial court . . .

involving the merits and necessarily affecting the judgment . . . ." Johnson argues that venue is a central issue in the case that impacts "the empaneling of a jury, docketing of the judgment and its enforceability." Johnson asserts that it would contravene SDCL 15-26A-7 for this Court not to review the venue order after a final judgment was entered on one of the claims impacted by the order.

[¶18.]    For an order to be reviewable under SDCL 15-26A-7 it "must involve the merits and necessarily affect the judgment appealed from." *Lang v. Burns*, 77 S.D. 626, 631, 97 N.W.2d 863, 866 (1959); *accord DRD Enters., LLC v. Flickema*, 2010 S.D. 88, ¶ 15, 791 N.W.2d 180, 185. "Ordinarily, a notice of appeal that specifies the final judgment in a case should be understood to bring up for review all of the previous rulings and orders that led up to and served as a predicate for that final judgment." *DRD Enters.*, 2010 S.D. 88, ¶ 16, 791 N.W.2d at 185 (quoting *Greer v. St. Louis Reg'l Med. Ctr.*, 258 F.3d 843, 846 (8th Cir. 2001)). *DRD Enterprises* involved an appeal from a summary judgment ruling resolving the entire case. On appeal, appellee sought to challenge a prior partial summary judgment order, but appellee did not file a notice of review of the earlier order. The *DRD Enterprises*' Court concluded jurisdiction existed to review the earlier ruling under SDCL 15-26A-7, because the intermediate order was "the predicate for the summary judgment now challenged by [appellant]. Without the circuit court's initial order ruling the description of the servient tenement sufficient, the court would not have rendered the summary judgment [appellant] now appeals." *Id.* ¶ 17, 791 N.W.2d at 186.

[¶19.] Here, the order denying a change of venue went solely to the procedural question of where the lawsuit would be heard. The venue order was not intertwined with the claims in Count 2 and did not serve as a predicate for the circuit court's entry of summary judgment on Count 2. Johnson has made no claim that the venue order impacted the court's summary judgment ruling.

[¶20.] Johnson claims that if we decline to review the venue order there is no other appellate avenue to review the order, but Johnson had the means to seek review of the venue order by timely petitioning for discretionary review of the venue order pursuant to SDCL 15-26A-13. Because we lack appellate jurisdiction, we decline to review the order denying the change of venue.

> 2. *Whether the circuit court's entry of final judgment on Count 2 of Stromberger Farms' complaint was an abuse of discretion.*

[¶21.] Before we review the circuit court's partial summary judgment ruling, we must first determine whether we have appellate jurisdiction by considering whether the circuit court properly entered a final judgment on Count 2. We review the entry of final judgment under SDCL 15-6-54(b) for an abuse of discretion. *Jacquot v. Rozum*, 2010 S.D. 84, ¶ 14, 790 N.W.2d 498, 503. When reviewing an entry of final judgment,

> we first determine whether the action involves multiple claims or multiple parties and thus falls within the purview of Rule 54(b). We then decide whether the trial court abused its discretion in making the determination that there was no just cause for delay in entering judgment with respect to one or more but fewer than all of the multiple claims.

*Davis v. Farmland Mut. Ins. Co.*, 2003 S.D. 111, ¶ 11, 669 N.W.2d 713, 718. "This question is not always easy of resolution, for there is no hard and fast test that can

be applied in a mechanical manner." *Id.* (quoting *Ochs v. Nw. Nat'l Life Ins. Co.*, 254 N.W.2d 163, 168 (S.D. 1977)).

[¶22.] A circuit court may enter final judgment on a single issue in a multi-claim case under SDCL 15-6-54(b) if "there is no just reason for delay." However, we have cautioned that Rule 54(b) orders should not be routine and are only appropriate in "infrequent harsh" cases. *Weisser v. Jackson Twp. of Charles Mix Cty.*, 2009 S.D. 43, ¶ 4, 767 N.W.2d 888, 889.[6] Further, we have stated that "Rule 54(b) certification is not a procedural formality." *Id.* (quoting *Davis*, 2003 S.D. 111, ¶ 13, 669 N.W.2d at 718). Rather "[i]t is 'an essential prerequisite' that has 'jurisdictional significance.'" *Id.* To this end, we have provided three rules to guide the circuit courts when considering a Rule 54(b) request:

> (1) the burden is on the party seeking final certification to convince the [circuit] court that the case is the "infrequent harsh case" meriting a favorable exercise of discretion; (2) the [circuit]

---

6. Stromberger Farms argues that we should re-examine our consideration of Rule 54(b) certifications in light of *Curtiss-Wright Corp. v Gen. Elec. Co.*, 446 U.S. 1, 100 S. Ct. 1460, 64 L. Ed. 2d 1 (1980), including our language limiting certification to "infrequent harsh" cases. *Curtiss-Wright* re-examined the applicable inquiry under Federal Rule 54(b) and identified that "the phrase 'infrequent harsh case' in isolation is neither workable nor entirely reliable as a benchmark for appellate review." 446 U.S. at 10, 100 S. Ct. at 1466. The Court went on to explain that there are "two aspects to the proper function of a reviewing court in Rule 54(b) cases." *Id.* One—this Court should "scrutinize the district court's evaluation of such factors as the interrelationship of the claims so as to prevent piecemeal appeals in cases which should be reviewed only as single units." *Id.* Two—after we have done the first inquiry, then we defer to the discretionary judgment of the circuit court "for that court is 'the one most likely to be familiar with the case and with any justifiable reasons for delay.'" *Id.* (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 437, 76 S. Ct. 895, 901, 100 L.Ed. 1297 (1956)). Because of the limited evaluation of the claims by the circuit court in this case, we leave for another day whether we should align our analysis for Rule 54(b) certifications with *Curtiss-Wright*.

court must balance the competing factors present in the case to determine if it is in the best interest of sound judicial administration and public policy to certify the judgment as final; (3) the [circuit] court must marshal[] and articulate the factors upon which it relied in granting certification so that prompt and effective review can be facilitated.

*Davis*, 2003 S.D. 111, ¶ 13, 669 N.W.2d at 718-19 (quoting *Ochs*, 254 N.W.2d at 168).

[¶23.]     We have also identified other relevant factors the circuit court may consider in its determination:

(1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the [circuit] court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in setoff against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Id.* at 719 (quoting *Ochs*, 254 N.W.2d at 169).  We have directed courts to include a "reasoned statement in support of its determination that 'there is no just reason for delay' and its express direction for the 'entry of a final judgment as to one or more but fewer than all of the claims or parties' where the justification for the certificate is not apparent." *Id.*

[¶24.]     Here, after receiving written arguments from the parties, the circuit court entered a final judgment on the partial summary judgment ruling without articulating the factors it considered in certifying a final judgment on Count 2. While the circuit court should have specified the factors it considered in granting the Rule 54(b) certification, on this record, the justification for the circuit court's

entry of a final judgment is readily apparent. Therefore, our independent review of the record convinces us that the court did not abuse its discretion in granting certification under Rule 54(b).

[¶25.] Count 2 of Stromberger Farms' complaint was a stand-alone claim seeking the excess proceeds from the sale of the cows. Although Johnson's counterclaim alleged that Stromberger Farms breached the Security Agreement by selling the cows, the circuit court resolved this issue in its summary judgment ruling. In fact, the summary judgment ruling resolved all the issues involving the sale of the cows and the disposition of the sale proceeds. Specifically, the court determined as a matter of law the amount owed to Johnson under the Sales Agreement, the remaining balance of the sale proceeds Stromberger Farms was entitled to receive, and that Stromberger Farms did not breach the Security Agreement by selling the cows.

[¶26.] The remaining claims between the parties are unrelated to the sale of the cows. Count 1 of Stromberger Farms' complaint alleged a contract claim against Johnson for refusing to allow the calves purchased from Johnson to be transferred to another feed lot. Johnson's remaining counterclaim alleged breaches of the separate pasture lease. Further, his third-party complaint alleged unrelated tort claims against Bart Stromberger, individually.

[¶27.] Nonetheless, Johnson claims if he is successful in this unrelated counterclaim for breach of the pasture lease against Stromberger Farms, he may be entitled to a setoff against any monies owed to Stromberger Farms under Count 2. He claims that by entering a final judgment on Count 2, the circuit court foreclosed

a setoff remedy. *See Hoaas v. Griffiths*, 2006 S.D. 27, ¶ 20, 714 N.W.2d 61, 67 (quoting 20 Am. Jur. 2d Counterclaim, Recoupment, & Setoffs § 6) ("The doctrine of setoff, or compensation is essentially an equitable one requiring that the demands of mutually indebted parties be set off against each other and that only the balance be recovered in a judicial proceeding by one party against the other.") However, at the time of the summary judgment hearing, the record provided the circuit court with no basis from which it could determine the validity or likelihood of success as to the unresolved breach of contract claims by both Johnson and Stromberger Farms, nor did the record suggest an amount of damages that may be associated with these claims.

[¶28.]     In contrast, no real dispute existed that Stromberger Farms was entitled to a substantial portion of the remaining sale proceeds, and that Johnson's actions had prevented Stromberger Farms from receiving these funds for nearly a year at the time the circuit court issued its summary judgment ruling. At the summary judgment hearing, the court expressed its view that Johnson acted unreasonably by refusing to allow the undisputed portion of the sale proceeds to be released to Stromberger Farms:

> So why are we playing the game here? Why don't – why doesn't Mr. Johnson tell the Plaintiff "Here is what I am owed"? [sic] And then the Plaintiff, if they disagree, could say, "No. Here is what we're owed or you're owed," and why. I mean, why are we not at that point?

[¶29.]     This is one of those "infrequent harsh" cases where requiring Stromberger Farms to wait for the release of substantial sale proceeds to which it was entitled until the other unrelated claims are resolved, is neither just nor

consistent with considerations of judicial economy. Indeed, Johnson agrees that Count 2 could be tried separately from the other counts in the case. There is no claim that a final resolution of issues involving the sale proceeds will impact the unresolved claims. Further, Johnson has not demonstrated that future proceedings of the unresolved claims will disturb or moot the final judgment entered on the sale proceeds. Johnson claims a possible right of setoff should he prevail on other unrelated claims, but the circuit court correctly noted the frivolity of Johnson's efforts to seize the undisputed portion of the sale proceeds belonging to Stromberger Farms.[7]

[¶30.] Finally, the entry of a final judgment on the sale proceeds promotes judicial economy by avoiding a second trial between these two parties should this Court determine the circuit court erred in granting summary judgment on the claim for the sale proceeds. For these reasons, the circuit court did not abuse its discretion by entering a final judgment on Count 2 of Stromberger Farms' complaint.

---

7. Johnson's actions following the sale of the cattle amounted to a de facto prejudgment attachment of proceeds belonging to Stromberger Farms. SDCL chapter 21-17A provides for the extraordinary remedy of prejudgment attachment "upon the conditions, and in the manner prescribed in this chapter." SDCL 21-17A-1. Stromberger Farms is a Nebraska corporation, but Johnson made no effort to seek a prejudgment attachment on the sale proceeds for his unrelated claims for breach of contract and tort. See SDCL 21-17A-3 and SDCL 21-17A-4 (addressing requirements for obtaining a writ of attachment against parties who are not residents of this state). Moreover, Johnson failed to post the bond required by SDCL 21-17A-7, in the event a prejudgment attachment is determined to be wrongful.

> 3. *Whether the circuit court erred in granting Stromberger Farms' motion for partial summary judgment.*

[¶31.] We apply the de novo standard when reviewing motions for summary judgment. *Law Capital, Inc. v. Kettering*, 2013 S.D. 66, ¶ 10, 836 N.W.2d 642, 645. The standard for summary judgment is well established:

> Summary judgment is proper where, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. We will affirm only when no genuine issues of material fact exist and the law was applied correctly. We make all reasonable inferences drawn from the facts in the light most favorable to the non-moving party.

*McKie Ford Lincoln, Inc. v. Hanna*, 2018 S.D. 14, ¶ 8, 907 N.W.2d 795, 798 (internal citations omitted).

[¶32.] Johnson asserts three errors by the circuit court in granting summary judgment on Stromberger Farms' claim for a portion of the sale proceeds. First, Johnson argues the cows bore his brand, making him the presumptive owner of the cows, and the resulting sale proceeds, under South Dakota brand registration laws.[8] Second, he claims that the circuit court erred in determining Stromberger Farms made an unconditional offer of performance under the Sales Agreement, and in determining that Johnson waived objection to Stromberger Farms' offer of performance. Finally, Johnson argues that Stromberger Farms breached the Security Agreement by selling the cows out of the normal course of business.

---

8. Johnson cites SDCL 40-21-10, SDCL 40-21-12, and SDCL 40-19-24, in support of his claim of presumptive ownership of the cows. SDCL 40-19-24 provides that proof of a registered brand may be prima facie evidence of ownership of cattle. Additionally, SDCL 40-21-10 sets forth the requirements for proof of ownership if cattle bear a registered brand other than the seller's.

a. Ownership of the Cows.

[¶33.]     Under the terms of the Sales Agreement, ownership of the cows transferred from Johnson to Stromberger Farms on November 1, 2016.  The Security Agreement also provided that Stromberger Farms owned the cows and calves.  Johnson signed both documents acknowledging Stromberger Farms' ownership of the cows and calves after November 1, 2016, and agreeing to execute the documents necessary to transfer ownership of the livestock to Stromberger Farms.  Any statutory presumption of ownership by Johnson under the South Dakota brand laws was rebutted by facts submitted as a part of the motion for summary judgment.[9]  "When substantial, credible evidence has been introduced to rebut the presumption, it shall disappear from the action or proceeding . . . ." SDCL 19-19-301.

[¶34.]     In resisting summary judgment, Johnson failed to present any facts challenging the validity of these documents, or otherwise dispute that Stromberger Farms owned the cows in December 2017.  Once the moving party has presented evidence supporting its claim, "[t]he nonmoving party . . . must present specific facts showing that a genuine, material issue for trial exists." *Nationwide Mut. Ins. Co. v. Barton Solvents Inc.*, 2014 S.D. 70, ¶ 10, 855 N.W.2d 145, 149 (quoting *Hass v. Wentzlaff*, 2012 S.D. 50, ¶ 11, 816 N.W.2d 96, 101).  The circuit court properly concluded that Stromberger Farms owned the cows.

---

9.     Shortly after the sale, the South Dakota Brand Board, through its attorney, released a hold on the sale proceeds from the cows and was "satisfied that ownership has been established."

b. Offer of Performance

[¶35.]        Johnson also argues that the circuit court erred in granting partial summary judgment because Stromberger Farms owed an additional $12,500 under the express terms of the Sales Agreement. Alternatively, Johnson argues that should this Court find the additional payment language in the Sales Agreement to be ambiguous, summary judgment was still improper because questions of fact exist concerning Stromberger Farms' obligation to pay the additional $12,500. Stromberger Farms argues that the circuit court properly determined it made an unconditional offer to pay off the balance owed under the Sales Agreement. Stromberger Farms further argues that the court properly determined that Johnson waived the claim that an additional $12,500 was owed because he failed to assert this claim at the time Stromberger Farms tendered payment of the balance of the Sales Agreement. Stromberger Farms relies on SDCL 20-5-15 and *American Federal Savings & Loan Ass'n of Madison v. Mid-Am. Serv. Corp.*, 329 N.W.2d 124 (S.D. 1983) to support its claim.

[¶36.]        We have stated that an offer of performance under SDCL chapter 20-5 must be "sufficient to discharge the liability and . . . not demand something in addition to, or outside of, the original agreement." *Berbos v. Krage*, 2008 S.D. 68, ¶ 21, 754 N.W.2d 432, 438 (quoting *Anderson v. Aesoph*, 2005 S.D. 56, ¶ 28, 697 N.W.2d 25, 28). "Yet, for tender to be unconditional, it must be the actual production of a sum not less than the amount due on a specific debt or obligation." *Buffalo Ridge Corp. v. Lamar Advert. of S.D., Inc.*, 2011 S.D. 4, ¶ 19, 793 N.W.2d 809, 814 (quoting *Berbos*, 2008 S.D. 68, ¶ 22, 754 N.W.2d at 438) (internal

quotations omitted). "An unconditional tender must be sufficient to discharge the liability." *Adrian v. McKinnie*, 2004 S.D. 84, ¶ 15, 684 N.W.2d 91, 98 (citing *Dougherty v. Beckman*, 347 N.W.2d 587, 591 (S.D. 1984)). *See also* SDCL 20-5-2 ("An offer of partial performance is of no effect").

[¶37.]     There is no dispute that on December 19, 2017, Stromberger Farms tendered the entire balance of principal and interest owed to Johnson under the Sales Agreement. However, Johnson claims the tender was not unconditional because Stromberger Farms failed to include the additional $12,500 payment. Johnson argues he was not obligated to accept an early payoff for less than the amount he believed he was owed, and the circuit court erred by determining as a matter of law that Johnson waived this disputed claim.

[¶38.]     In considering these arguments we review our prior decision in *American Federal Savings & Loan Ass'n of Madison*, where a mortgagor tendered payment of the balance of principal and interest under a mortgage after mortgagee accelerated the balance owed under a "due on sale" clause in the mortgage. 329 N.W.2d 124. Mortgagor's tender, however, did not include additional penalty interest under the terms of a "prepayment penalty" clause in the mortgage. Mortgagee refused the tender but failed to state a specific objection to the amount of the tender. Nonetheless, the Court determined the "tender was legally insufficient" because it did not include the disputed prepayment penalty amount in the tender. *Id.* at 127. The Court concluded that mortgagee "had a right to test the validity of their [disputed] claim." *Id.* Consistent with prior decisions, the Court stated:

> But under the Civil Code the party has no right, any more than
> he would have had under the common law, when tendering a

-18-

> payment, to require a receipt in full or a satisfaction in full of the lien, or, in other words, when one party is honestly claiming a greater amount to be due than the other party concedes, he cannot be put in position of running the risk of losing his lien, not only upon the disputed claim, but also upon the undisputed part, by failing to receive the smaller amount in full; but he has the right to test the validity of his further claim, and the condition attached to the tender must be such as to leave him free to contest such right.

*Id.* (quoting, *Pittsburg Plate Glass Co. v. Leary*, 25 S.D. 256, 126 N.W. 271, 275 (1910)).

[¶39.]     Notwithstanding its holding that the tender was legally insufficient, *American Federal Savings & Loan Ass'n of Madison* concluded that the mortgagee's failure to provide a reason why it believed the tender was insufficient "discharged defendants from liability for [additional] interest, costs and attorney's fees [after the date of the tender]." *Id.* In applying the statutory waiver provision to the mortgagee's claim for interest and costs after the date of the tender, the Court stated, "[t]he obvious purpose of SDCL 20-5-15 is to allow the debtor an opportunity to then and there correct an insufficient tender." *Id.*

[¶40.]     Applying *American Federal Savings & Loan Ass'n of Madison* here, we conclude that fact questions remain as to whether Stromberger Farms' tender was legally insufficient because it did not include the disputed $12,500. In resisting summary judgment, Johnson points to the handwritten language in the Sales Agreement stating, "Add 12500 to *each payment*." (emphasis added). Evidence was also presented that Stromberger Farms had paid an additional $12,500 with each of the two prior annual payments under the Sales Agreement. However, the Sales Agreement does not state whether the additional payment was owed if the balance of the Sales Agreement was paid early. Because the Sales Agreement is ambiguous

concerning Stromberger Farms' obligation to make this additional payment, the circuit court erred in determining as a matter of law that this debt was extinguished.

[¶41.] As such, Johnson has a right to pursue his disputed claim for an additional $12,500 under the Sales Agreement. However, Johnson waived a claim for additional interest that would have accrued on the principal balance of the Sales Agreement after December 19, 2017, by failing to specify how Stromberger Farms' tender of the entire balance of principal and interest under the Sales Agreement was insufficient.[10] Stromberger Farms made numerous attempts to determine the basis of Johnson's refusal of the tender to no avail. On these undisputed facts, interest on the principal balance of the Sales Agreement stopped after Stromberger Farms tendered the entire balance of principal and interest.

c. Breach of Contract Claim.

[¶42.] Finally, Johnson argues that the circuit court erred in determining that Stromberger Farms did not breach the Sales Agreement or Security Agreement by selling the cows. Specifically, Johnson claims the circuit court erred in determining as a matter of law that the cows were sold in the normal course of business, and in relying on the definition of a buyer in the ordinary course of business under SDCL 57A-1-201. However, even if questions of fact exist as to

---

10. In addition to waiver under *American Federal Savings & Loan Ass'n of Madison,* Johnson failed to present any claim for additional *interest* owed under the Sales Agreement in his resistance to the motion for partial summary judgment. Johnson also failed to argue to the circuit court, or to this Court on appeal, that there was any additional contract interest owed after Stromberger Farms tendered the entire amount of principal and interest on December 19, 2017.

whether the cows were sold in the normal course of business, Johnson's sole remedy was to recover the balance owed under the Sales Agreement, as the record is devoid of facts showing Johnson sustained any other damages caused by Stromberger Farms' sale of the remaining cows.

[¶43.] The Security Agreement afforded Johnson the remedies as provided by the Uniform Commercial Code (UCC). These remedies included a right to possession of the collateral, sale of the proceeds, and satisfaction of the indebtedness owed to him under the Sales Agreement. *See* SDCL 57A-9-607. Additionally, SDCL 57A-9-608 provides a secured party is entitled to satisfy the obligations owed by the debtor under the agreements. Thereafter, SDCL 57A-9-608 requires the secured party to "*account to and pay a debtor for any surplus*[.]" (emphasis added).

[¶44.] A secured creditor may also be entitled to recover expenses of collection and "to the extent provided for by agreement . . . reasonable attorney's fees[.]" SDCL 57A-9-608. However, neither the Sales Agreement, nor the Security Agreement provided Johnson with any right to recover attorney's fees in the event of a default. Further, Johnson failed to present any evidence or argument showing that he incurred any expenses or collection costs for the enforcement of his rights as a secured creditor.

[¶45.] "An action for breach of contract requires proof of an enforceable promise, its breach, and damages." *McKie v. Huntley*, 2000 S.D. 160, ¶ 17, 620 N.W.2d 599, 603 (citing *Krzycki v. Genoa Nat'l Bank*, 496 N.W.2d 916, 923 (Neb. 1993)). "If undisputed facts fail to establish each required element in a cause of

action, summary judgment is proper." *Id.* (citing *Groseth Int'l, Inc. v. Tenneco Inc.*, 410 N.W.2d 159, 169 (S.D. 1987)). As discussed above, disputed facts exist concerning Johnson's claim that he is owed an additional $12,500 under the Sales Agreement. Apart from the disputed claims of Stromberger Farms and Johnson to $12,500 of the sale proceeds, Johnson failed to show any other damages arising from any alleged breach of the contract by Stromberger Farms in selling the cows. The circuit court properly denied Johnson's remaining claims for breach of contract.[11]

## Conclusion

[¶46.] Johnson's appeal of the order denying the motion for change of venue is dismissed for lack of jurisdiction. We affirm the circuit court's Rule 54(b) certification and summary judgment ruling, except for both parties' disputed claims relating to $12,500 of the sale proceeds. On remand the circuit court shall modify the judgment against Johnson and reduce the judgment by $12,500. The remainder of the judgment on Count 2 is affirmed. Our ruling does not modify any lien rights held by Johnson in the $12,500 disputed portion of the sale proceeds and both parties are entitled to assert their respective claims concerning this amount.

[¶47.] GILBERTSON, Chief Justice, and KERN, SALTER and DEVANEY, Justices, concur.

---

11. Johnson has not claimed, and the Sales Agreement does not provide for, contractual interest on the disputed claim for $12,500. We do not reach the question of whether the party prevailing on remand is entitled to interest on this claim.