#29254-dismiss-MES
**2021 S.D. 47**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

JOHN NELSON,                                        Plaintiff and Appellant,


    v.


ESTATE OF GORDON CAMPBELL,              Defendant, Third-Party
                                                   Plaintiff and Appellee,


    v.


REDWATER GRAZING ASSOCIATION,
INC., a South Dakota Cooperative Grazing
District,                                                          Third-Party Defendant, Fourth-
                                                 Party Plaintiff and Appellant,


    v.


JARED CAPP,                                              Fourth-Party Defendant and
                                                 Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
BUTTE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE MICHAEL W. DAY
Judge

* * * *

CONSIDERED ON BRIEFS
OCTOBER 5, 2020
OPINION FILED **08/11/21**

DAVID L. CLAGGETT of
Claggett & Dill, Prof. LLC
Spearfish, South Dakota

Attorneys for plaintiff, fourth-party plaintiff, and appellants.


ROGER A. TELLINGHUISEN
NATHAN R. CHICOINE of
DeMersseman, Jensen, Tellinghuisen,
    & Huffman, LLP
Rapid City, South Dakota

Attorneys for defendant, third-party plaintiff, and appellee, Estate of Gordon Campbell.


KELLEN B. WILLERT of
Bennett, Main, Gubbrud,
    & Willert, P.C.
Belle Fourche, South Dakota

Attorneys for fourth-party defendant and appellee, Jared Capp.

#29254

SALTER, Justice

[¶1.]        After one of three founding members of a cooperative grazing association passed away, his estate invoked a provision of the association's bylaws to withdraw previously-contributed real estate and sell it to a third party.  Another member objected, asserting: 1) the estate was contractually obligated to sell the real estate to him because he submitted the high bid; and 2) the estate was obligated under the grazing association's bylaws to allow him a right of first refusal to purchase the real estate.  The circuit court granted the estate's motion for summary judgment on these claims, but its decision did not resolve all of the claims among the parties.  The court certified only the summary judgment order directing the association to allow the estate's withdrawal as final under the provisions of SDCL 15-6-54(b).  For the reasons explained below, however, we dismiss the appeal.

**Background**

[¶2.]        Redwater Grazing Association, Inc., (Redwater or the Association) is a cooperative grazing district operating in Butte County and incorporated under specific provisions of South Dakota law.  *See* SDCL ch. 40-23 (providing for cooperative grazing districts).[1]  Gordon Campbell, John Nelson, and Richard Marsh founded Redwater by contributing land to the Association in 2010 in exchange for stock and individual membership rights.  In Campbell's case, he contributed two parcels totaling approximately 53 acres—one parcel he owned individually and

---

1.       A cooperative grazing district is a "cooperative corporation organized for the purpose of aiding in the conservation of natural forage resources within a designated area to be jointly used by its members, and for aiding in the restoration and improvement of lands[.]"  SDCL 40-23-1.

-1-

another parcel he owned jointly with his two children (collectively, the Property).[2] Redwater's articles of organization (the articles) were filed with the Secretary of State on September 29, 2010, and its members adopted bylaws on October 30, 2010.

[¶3.]     The articles and bylaws contain certain restrictions upon the members' ability to transfer stock and membership rights.  For example, the articles provide that a member's stock in Redwater is "subject to a first option of repurchase in the Association in the event of a sale . . . ."  In addition, the bylaws allow a member to "sell, permanently transfer, give or assign, any or all Membership rights to another family farmer who is qualified for membership[.]"  However, where the proposed transfer involves grazing rights, those rights "must first be offered to one or more existing Members."

[¶4.]     At issue in this appeal is a particular provision of Redwater's bylaws that allows members the unilateral right to withdraw from the Association and receive a deed, reconveying the real estate that was originally contributed:

> Any Member desiring to withdraw from the association shall be entitled upon 30 days written notice to the association, to receive a deed from the association of the land which that member had previously transferred to the association.

[¶5.]     Gordon Campbell passed away on April 1, 2017.  The Estate of Gordon Campbell (the Estate) sought to withdraw the Property from Redwater and sell it, but not in that order.  The Estate first undertook efforts to prospectively sell the

---

2.     The parties have not suggested that the fact Campbell contributed real estate jointly owned with his children is significant to their arguments.

Property by soliciting bids before withdrawing from the Association and receiving a deed.[3]

[¶6.] The Estate's first attempt yielded two bids—a $249,100 bid from Redwater member John Nelson (Nelson), and a bid of $260,000 from Jared Capp (Capp). Counsel for the Estate sent an email to the two bidders, explaining that the offers were below the Property's appraised value and were not accepted. The Estate commenced another round of bidding and informed the would-be buyers that it would not accept an offer below $283,000, advising further that it would accept the second-highest bid if a sale to the highest bidder was eventually unsuccessful.

[¶7.] Capp offered $283,000 on February 15, 2018, and Nelson offered $301,000 on February 20, 2018. The Estate sent out another letter, inviting bids over $301,000 and informing bidders that this would be the final time it would consider offers. Capp offered $400,000, which the Estate accepted on March 30, 2018. Nelson did not make another offer.

[¶8.] The Estate subsequently sought a deed from Redwater conveying the Property to the Estate. Through its counsel, Redwater responded and declined to issue the deed. This action followed, originally as an effort by Nelson to enforce what he believed to be a binding agreement to purchase the Property resulting from the Estate's effort to obtain bids. The addition of other parties and claims has led to a profusion of counterclaims, cross claims, and third- and fourth-party claims,

---

3. The parties have not argued that the sequence of these events—arranging a sale of the Property before withdrawing from the Association—is consequential.

relating not only to the bidding process, but also to the Estate's request to withdraw from the Association as well as other, more peripheral claims.

[¶9.] Nelson's initial claims alleged that the Estate's email seeking bids over $283,000 constituted an offer to sell the Property to the highest bidder. He argued that his $301,000 bid was an acceptance of the offer, resulting in a binding agreement. Nelson sought specific performance of the alleged contract and also asserted a breach of contract claim seeking damages. He filed a notice of *lis pendens* relating to the Property and further claimed that the Estate's proposed sale to Capp would result in unjust enrichment. In its counterclaims against Nelson, the Estate asserted claims of tortious interference with a contract and slander of title.

[¶10.] Through a third-party complaint against Redwater, the Estate sought specific performance of the bylaw requirement allowing withdrawal and the issuance of a deed. The Estate also alleged claims of breach of contract and tortious interference with a contract against Redwater, which responded by seeking a declaration that "any deed Redwater issues is to be issued to John Nelson."[4] In addition, Redwater claimed that the Estate had wrongfully interfered with its business relationship with Nelson who it alleged had "a valid business relationship or expectancy to purchase the subject property from [the] Estate . . . ."

[¶11.] Capp became a party to the litigation by virtue of Redwater's fourth-party complaint, alleging tortious interference with a business relationship and seeking a declaration that "Capp is not entitled to any deed . . . and that such deed

---

4. Nelson and Redwater have been represented by the same attorney throughout the circuit court proceedings and on appeal.

is to be issued to John Nelson." Capp's counterclaims against Redwater included tortious interference with a contractual relationship, breach of contract, and a request for a declaration regarding: 1) Redwater's obligation to convey the Property to the Estate pursuant to the bylaws; and 2) the rights and responsibilities of all parties with regard to the bylaws and Capp's purchase agreement with the Estate.

[¶12.] Nelson filed a cross-complaint against Capp alleging tortious interference with a business relationship, tortious interference with an agricultural lease,[5] and seeking the return of personal property allegedly bought by Nelson from Campbell, stored on the Property, and taken by Capp. Capp responded with counterclaims for conversion (claiming Nelson entered the Property and interfered with Capp's interest), tortious interference with a contractual relationship, unjust enrichment from Nelson's use of the Property, waste relating to Nelson's prior use of the Property as a lessee, and breach of Nelson's fiduciary duties as a member of Redwater.

[¶13.] On September 9, 2019, the circuit court ruled on the Estate's motion for partial summary judgment relating to two of the principal claims in this dispute. The court determined there was no contract between Nelson and the Estate for the sale of the Property as a result of the bidding process and granted the Estate's motion for summary judgment on Nelson's contract claim. However, the court initially denied the Estate's motion for summary judgment relating to its claim that Redwater was obligated by the bylaws to allow withdrawal and issue a deed conveying the Property to the Estate. The court interpreted Redwater's bylaws to

---

5. Nelson had previously leased the Property from Redwater for several years.

require a right of first refusal for existing members before the Estate could withdraw and sell the Property to a third party.

[¶14.] The Estate moved for reconsideration of this latter ruling and, alternatively, asked that the circuit court certify the earlier decision as final under SDCL 15-6-54(b) (Rule 54(b)). The Estate argued that the court had erred by applying the bylaws' rules for *transferring* its "membership interest" instead of the provision that allows a member to *withdraw* from the Association outright and receive a deed, conveying the previously-contributed real estate. In the Estate's view, it was attempting to sell the real estate that should be returned to it, not stock or membership rights, and therefore, there was no applicable right of first refusal for the Association or any individual member.

[¶15.] The circuit court ultimately agreed and, in a December 26, 2019 memorandum opinion, modified its previous decision. As part of its revised ruling, the court granted summary judgment to the Estate and required Redwater to deliver a deed conveying the Property to the Estate. The court also certified this ruling as a final judgment under Rule 54(b). Although the Estate asked for reconsideration *or* certification under Rule 54(b), the court granted *both*.

[¶16.] In addition, the circuit court's memorandum opinion summarized each of its other pretrial rulings to date. Included among them was the court's decision to grant summary judgment to Capp on Nelson's four claims against him and to deny Nelson's and Redwater's motions to dismiss Capp's claims against them. The court also granted summary judgment to the Estate on Redwater's claims alleging wrongful interference with a business relationship and seeking favorable

declaratory relief. The court denied Nelson's and Redwater's motions to dismiss Capp's claims against them and denied their joint motion for summary judgment concerning their claims against the Estate and Capp.[6] The court also denied Nelson's and Redwater's motions for a scheduling order and for leave to amend their pleadings.

[¶17.] Even though the circuit court granted summary judgment on some of the parties' claims, it did not determine all of the various claims among the parties, some of which were not the subject of pretrial litigation. Left unresolved are the Estate's claims against Nelson and Redwater for tortious interference with its contract with Capp and the Estate's claim that Nelson's *lis pendens* filing slandered title to the Property. Also still pending are Capp's claims against Nelson and Redwater, which include tortious interference with a contractual relationship, conversion, unjust enrichment, and breach of a fiduciary duty. So far as the record reveals, Redwater has not yet issued a deed for the Property to the Estate, and there is no indication the sale to Capp has occurred.

[¶18.] Nelson and Redwater have appealed. In a single brief, they make a passing claim that the circuit court improperly granted the Estate's motion for Rule 54(b) certification, but for the most part, they seem to anticipate the assertion of appellate jurisdiction. Reading the court's Rule 54(b) certification expansively, Redwater and Nelson seek review of four adverse pretrial decisions:

---

6. Nelson and Redwater filed a single summary judgment motion seeking an order that: 1) the Estate must offer its shares to Nelson and Redwater without further delay; 2) at a minimum, Nelson and Redwater have a right of first refusal for the Estate's shares governed by a bona fide good faith order; and 3) Capp trespassed on and damaged Redwater's property.

    (1) a claim by Redwater and Nelson that the circuit court erred by granting the Estate's motion for summary judgment allowing it to withdraw from Redwater and receive a deed for Campbell's property;

    (2) Nelson's claim that the court erred when it granted Capp's motion for summary judgment relating to Nelson's claims against Capp;

    (3) a claim by Nelson and Redwater that the court erred when it denied their motions to dismiss Capp's counterclaims against them; and

    (4) a claim by Nelson and Redwater that the court abused its discretion when it denied their motion to amend their pleadings.

[¶19.]    In their request for relief, Nelson and Redwater do not seek dismissal for lack of appellate jurisdiction which would be the correct disposition if, in fact, the circuit court did not correctly apply Rule 54(b). Rather, Nelson and Redwater have asked us to grant them relief on the merits, "revers[ing] . . . the trial court's [j]udgment . . . on their claims against Estate and Capp or remand with instructions for a scheduling order and jury trial on the merits."

[¶20.]    The Estate argues on appeal that the circuit court acted within its discretion when it certified as final the revised decision to grant summary judgment on the claim that Redwater was obligated to allow the Estate's withdrawal and issue a deed to it conveying the Property. Notably, although the Estate is the party arguing in favor of a Rule 54(b) certification, it has not separately sought appellate review of any issues and only asked for Rule 54(b) certification in the event the circuit court did not grant its motion to reconsider the court's earlier decision. The Estate and Capp, in separate briefs, otherwise ask us to affirm the circuit court's decisions on the four issues identified by Nelson and Redwater.

[¶21.]    Despite the parties' broad view of our appellate jurisdiction in this case, the operative portion of the circuit court's Rule 54(b) certification is narrow

and confined to the claim relating to Redwater's obligation under the bylaws to allow the Estate's withdrawal:

> [The court] finds that there is no just reason for delay and directs entry of final judgment requiring Redwater Grazing Association, LLC [sic] to *specifically perform its obligations under the By Laws and deliver the deeds to the Estate.*

(Emphasis added.)

[¶22.] Although the circuit court cited the five factors relating to a decision to certify an order as final under Rule 54(b), the court did not apply them. *See Davis v. Farmland Mut. Ins. Co.*, 2003 S.D. 111, ¶ 13, 669 N.W.2d 713, 719 (listing factors). Instead, the court stated simply that the "entry of final judgment as to the Third-Party Complaint promotes judicial efficiency and does not subject the parties to unnecessary litigation and review."

[¶23.] Under the circumstances, we find it necessary to examine the existence of appellate jurisdiction. *See Johnson v. Lebert Const., Inc.*, 2007 S.D. 74, ¶ 4, 736 N.W.2d 878, 879 ("We are required to take notice of jurisdictional questions, whether presented by the parties or not." (quoting *Double Diamond v. Farmers Co-op. Elevator*, 2003 S.D. 9, ¶ 6, 656 N.W.2d 744, 746)).

## Analysis

### *Certifying an Order as Final under SDCL 15-6-54(b)*

[¶24.] "[O]ur appellate jurisdiction is generally limited to a review of final judgments." *MGA Ins. Co. v. Goodsell*, 2005 S.D. 118, ¶ 33, 707 N.W.2d 483, 489 (Zinter, J., concurring); *see also* SDCL 15-26A-3 (listing appealable orders). Most often, these judgments are, in fact, final in the sense that they "end[] the litigation on the merits and leave[] nothing for the court to do but execute the judgment."

*Knecht v. Evridge*, 2020 S.D. 9, ¶ 42, 940 N.W.2d 318, 331 (quoting *Midcom, Inc. v. Oehlerking*, 2006 S.D. 87, ¶ 15, 722 N.W.2d 722, 726). However, even orders that resolve only some of the claims in a case can, nevertheless, be designated as final under the provisions of Rule 54(b):

> When multiple claims for relief or multiple parties are involved in an action, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

SDCL 15-6-54(b).

[¶25.] A circuit court's decision to designate an order as final pursuant to Rule 54(b) does not conclusively assure its reviewability. A Rule 54(b) certification purports to transform an otherwise interlocutory order into a final one, having the apparent effect of creating appellate jurisdiction. *See Weisser v. Jackson Twp.*, 2009 S.D. 43, ¶ 4, 767 N.W.2d 888, 889 ("A Rule 54(b) certification is not a procedural formality. It is 'an essential prerequisite' that has 'jurisdictional significance.'" (quoting *Davis*, 2003 S.D. 111, ¶ 13, 669 N.W.2d at 718)). *See also Weisser*, 2009 S.D. 43, ¶ 3, 767 N.W.2d at 889 ("[W]e . . . review the question of appealability of a judgment entered pursuant [to Rule 54(b)], either on the motion of the respondent or on our own motion." (quoting *Ochs v. Northwestern Nat. Life Ins. Co.*, 254 N.W.2d 163, 166 (S.D. 1977))).

[¶26.] Of course, the existence of appellate jurisdiction is a topic of particular concern to us, and we are not obligated to indifferently accept review of a circuit court's Rule 54(b) certification. Rather, we first consider the court's certification for an abuse of discretion. *Stromberger Farms, Inc. v. Johnson*, 2020 S.D. 22, ¶ 21, 942

N.W.2d 249, 256. However, "[w]e must necessarily accord the [trial] court less deference . . . when . . . the [trial] court offers no rationale for its decision to certify." *Fox v. Baltimore City Police Dep't*, 201 F.3d 526, 531 (4th Cir. 2000); *see also McAdams v. McCord*, 533 F.3d 924, 928 (8th Cir. 2008) (holding the deference for the decision to certify under Rule 54(b) "rests on the assumption that the [trial] court undertook to weigh and examine the competing interests involved in a certification decision" (citation omitted)).

[¶27.] Although there "is no hard and fast test that can be applied in a mechanical manner[,]" we have identified three principles for trial courts to use when determining a Rule 54(b) request:

> (1) the burden is on the party seeking final certification to convince the trial court that the case is the "infrequent harsh case" meriting a favorable exercise of discretion; (2) the trial court must balance the competing factors present in the case to determine if it is in the best interest of sound judicial administration and public policy to certify the judgment as final; (3) the trial court must marshal and articulate the factors upon which it relied in granting certification so that prompt and effective review can be facilitated.

*Davis*, 2003 S.D. 111, ¶¶ 11-13, 669 N.W.2d at 718-19, (quoting *Ochs*, 254 N.W.2d at 168-69).[7]

---

7. In *Stromberger Farms*, we acknowledged that the United States Supreme Court has "re-examined the applicable inquiry under Federal Rule 54(b)" and concluded that "the phrase 'infrequent harsh case' in isolation is neither workable nor entirely reliable as a benchmark for appellate review." *Stromberger Farms*, 2020 S.D. 22, ¶ 22 n.6, 942 N.W.2d at 256 n.6 (discussing *Curtiss-Wright Corp. v Gen. Elec. Co.*, 446 U.S. 1, 10, 100 S. Ct. 1460, 1466, 64 L. Ed. 2d 1 (1980)). The Estate argues that we should find *Curtiss-Wright* instructive and abandon what it describes as the "'infrequently harsh case' standard." In the Estate's view, we should then review the circuit court's discretionary Rule 54(b) designation with deference after conducting an

(continued . . .)

[¶28.]     As indicated above, several factors may bear upon the decision to allow Rule 54(b) certification, including the following:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the [trial] court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in setoff against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Id.* ¶ 13, 669 N.W.2d at 719 (quoting *Ochs*, 254 N.W.2d at 169).

[¶29.]     "[A]n application for a 54(b) order requires the trial judge to exercise considered discretion, weighing the overall policy against piecemeal appeals against whatever exigencies the case at hand may present." *Id.* (quoting *Ochs*, 254 N.W.2d at 168). Central to the circuit court's determination in this regard is a "reasoned statement in support of its determination that 'there is no just reason for delay[.]'" *Huls v. Meyer*, 2020 S.D. 24, ¶ 17, 943 N.W.2d 340 (quoting *Weisser*, 2009 S.D. 43, ¶ 4, 767 N.W.2d at 889). This is a substantive requirement of Rule 54(b) certification, and we have held that "*[m]ere recitation of the of the statutory language is insufficient.*" *Id.*

---

(. . . continued)
>  inquiry into the interrelationship among the multiple claims. However, we think it would be unwise to reexamine our rules for reviewing Rule 54(b) certifications at this juncture because, here, as in *Stromberger Farms*, the "limited evaluation of the claims by the circuit court" makes it difficult to assess the exercise of the court's discretion. 2020 S.D. 22, ¶ 22 n.6, 942 N.W.2d at 256 n.6.

[¶30.]     A narrow exception to the requirement of a reasoned statement exists in instances where the justification supporting a Rule 54(b) certification is "readily apparent" from the record. *Stromberger Farms*, 2020 S.D. 22, ¶ 24, 942 N.W.2d at 257; *see also Davis*, 2003 S.D. 111, ¶ 13, 669 N.W.2d at 719 (holding a reasoned statement is necessary "where the justification for the certificate is not apparent" (quoting *Ochs*, 254 N.W.2d at 170)). In *Stromberger Farms*, we held that the absence of a reasoned statement supporting the Rule 54(b) certification did not preclude the assertion of appellate jurisdiction because support for a determination of finality was readily apparent from the record. 2020 S.D. 22, ¶ 24, 942 N.W.2d at 257. At issue was "a patently independent claim" for money "held by a non-party sale barn . . . and the universal acknowledgement that nearly all of the money was owed to the plaintiff." *Huls*, 2020 S.D. 24, ¶ 20, 943 N.W.2d at 345 (discussing *Stromberger Farms*).

[¶31.]     Here, the circuit court's decision to modify its earlier ruling and grant the Estate's motion for summary judgment on its claim that Redwater must permit its withdrawal and issue a deed to the Property did not resolve all of the claims among the parties. Still pending are claims by the Estate and Capp for damages against Nelson and Redwater under various theories.[8] Though the circuit court's

---

8.     The circuit court's memorandum opinion seems to suggest that it allowed Rule 54(b) certification as much for purposes of an interim appeal as to allow immediate execution of its order so that the Estate could complete its sale to Capp. But that would not obviate the need to comply with the requirements for Rule 54(b) certification. Indeed, we recently held in *Patterson v. Plowboy, LLC*, that a circuit court seeking "[t]o immediately enforce its order" must "address and articulate the relevant factors underlying its decision to certify

(continued . . .)

Rule 54(b) certification accounts for this fact, it did not contain a reasoned statement supporting it. Nor did it contain an application of the rules and factors from our *Davis* decision. *See supra* ¶ 28. Without this analysis, the court's bare references to "judicial efficiency," "unnecessary litigation," and "no just reason for delay" do not support the decision to certify the order granting the Estate's motion for summary judgment against Redwater as final. We have previously held that these types of conclusory statements do not, themselves, satisfy the circuit court's obligation to "marshal[] and articulate the factors upon which it relied in granting certification so that prompt and effective review can be facilitated." *Weisser*, 2009 S.D. 43, ¶ 4, 767 N.W.2d at 890 (quoting *Davis*, 2003 S.D. 111, ¶ 13, 669 N.W.2d at 719).

[¶32.] Under the circumstances, therefore, appellate jurisdiction exists only if justification for the Rule 54(b) certification is readily apparent from the record. We conclude the reasons for the Rule 54(b) certification are not readily apparent. This case presents a complex procedural grouping of parties and claims, and it is not evident to us that our review of the circuit court's summary judgment order will further judicial economy or necessarily achieve efficiencies in the remaining litigation. Indeed, the narrow scope of the circuit court's Rule 54(b) certification alone supports this conclusion because it does not purport to include the court's other decisions relating to the bidding process or the ownership and control of personal property left on the Property.

---

(. . . continued)
> the judgment as final." 2021 S.D. 25, ¶ 24, 959 N.W.2d 55, 61 (citing *Stromberger Farms*, 2020 S.D. 22, ¶¶ 22-23, 942 N.W.2d at 256-57).

[¶33.] In addition, there are remaining claims that were not the subject of pretrial litigation and remain pending. Included among these as-yet unlitigated claims are allegations by the Estate and Capp of wrongful interference with a contract against Nelson and Redwater, the Estate's slander of title claim, and Capp's claim for waste, conversion, and breach of fiduciary duty against Nelson.

[¶34.] The record, therefore, suggests that accepting appellate jurisdiction here would lead to piecemeal litigation of the myriad claims among the four parties. We dismiss the appeal.

[¶35.] JENSEN, Chief Justice, and KERN and DEVANEY, Justices, and GILBERTSON, Retired Chief Justice, concur.

[¶36.] MYREN, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.